117 S.W.3d 309 (2003)
Jesus NUÑEZ, Appellant,
v.
The STATE of Texas, Appellee.
No. 13-00-767-CR.
Court of Appeals of Texas, Corpus Christi-Edinburg.
August 21, 2003.
Rehearing Overruled October 9, 2003.
*313 Larry Warner, Brownsville, for appellant.
David W. Hartmann, Asst. County (Cr. Dist.) Attorney, Yolanda De Leon, District Attorney, Brownsville, for state.
Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

OPINION
Opinion by Justice CASTILLO.
A jury convicted appellant Jesus Nuñez of one count each of burglary of a habitation with intent to commit assault and with intent to commit aggravated assault,[1] two counts of aggravated assault with a deadly weapon,[2] and one count of injury to *314 an elderly individual.[3] After the jury verdict, the State abandoned the count alleging burglary of a habitation with intent to commit assault. The trial court sentenced Nuñez to thirty years imprisonment in the Institutional Division of the Texas Department of Criminal Justice and assessed a $10,000 fine for the burglary, concurrent ten- and fifteen-year sentences for the aggravated assaults, and a concurrent fifteen-year sentence for the injury to an elderly individual. Nuñez raises constitutional, sufficiency, and evidentiary issues. We affirm.

I. APPLICABLE RULES
Nuñez filed a timely notice of appeal on November 8, 2000. The rules of appellate procedure governing how criminal appeals proceed were amended effective January 1, 2003. Generally, rules altering procedure do not fall within the prohibition in the Texas Constitution against retroactive application of laws that disturb vested, substantive rights. See TEX. CONST. art. I, § 16; see also Ibarra v. State, 11 S.W.3d 189, 192 (Tex.Crim.App.1999). Therefore, this Court applies the current rules of appellate procedure to this appeal. We may not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities. Tex.R.App. P. 44.3. We also are prohibited from affirming or reversing a judgment or dismissing an appeal if the record prevents the proper presentation of an appeal and can be corrected by the trial court. TEX. R.APP. P. 44.4(a). Accordingly, we abated the appeal on July 21, 2003 and ordered a supplemental record to include, in compliance with rule 25.2(a)(2), the trial court's certification of Nuñez's right of appeal. See TEX.R.APP. P. 25.2(a)(2). We received a supplemental record on August 13, 2003 that includes the trial court's certification of Nuñez's right of appeal. We now turn to the merits.

II. PRELIMINARY FACTS

A. Evidence at Culpability Phase of Trial
Nuñez and Alicia Mendez were once married to each other. By the end of March of 2000, the couple had been divorced about a year. Despite their divorce, they began living together again. Mendez's home is part of a duplex. Mendez's eighty-one-year-old mother, Vicenta de la Cruz, lives in the other half. By May 26, 2000, Nuñez had been living in Mendez's home about five weeks.
The events of May 26, 2000 unfolded for the jury through the testimony of Vicenta de la Cruz and Mendez's sister, Dora de la Cruz. Several law enforcement officers and a paramedic also testified.
About 5:30 the evening of May 26, a physical confrontation occurred between Nuñez and Mendez in Vicenta de la Cruz's part of the duplex. Nuñez struck Mendez and pulled her hair. Nuñez left in Mendez's truck. Mendez reported the incident to the police. She told them Nuñez had taken the truck. Over the next few hours, Nuñez and Mendez spoke several times on the telephone. Nuñez asked Mendez to meet him away from the house "without the police" so he could return the truck. Mendez insisted he bring the truck back to her house. After speaking to Nuñez, Mendez called the police again. The authorities assured her they had received her earlier report, had alerted the border patrol, and were on the lookout for Nuñez and the truck.
*315 Dora de la Cruz testified that Mendez had told her she was afraid of Nuñez and wanted him to move out of her home. After Nuñez left, Dora de la Cruz told the jury, Mendez asked her mother and sister to go back to her side of the duplex with her "because she was afraid that Jesus would be coming back." About 10:00 that night, Mendez and her mother and sister returned to Mendez's side of the duplex. Mendez gathered Nuñez's personal belongings and placed them outside in a chair near the front door. She locked the doors. She had her sister secure the front door with a security chain, Dora de la Cruz testified. "[S]he didn't want Jesus Nunez coming into her home."
Nuñez drove up in the truck about 10:30 p.m. Vicenta de la Cruz telephoned the police. Nuñez tried to get into the duplex with the house key from Mendez's truck key ring. The security chain on the front door blocked his entry. He forced the door open, which broke the security chain, front door, and door frame. Dora de la Cruz warned Nuñez that he had no right to be in the house. Nuñez attacked the three women with his fists and with Vicenta de la Cruz's three-pronged metal walking cane. Vicenta de la Cruz called the police again. Two police officers arrived. After a struggle, the officers subdued Nuñez and took him into custody. A sheriff's deputy arrived and called emergency medical services. EMS personnel arrived and treated the three women. A family friend drove them to the hospital for additional treatment.

B. Evidence at Punishment Phase of Trial
On May 30, 2000, Mendez swore out a complaint and described the events of May 26, 2000. She swore that Nuñez did not have her permission to take the truck and that she had refused to let him back into the house when he returned home later that evening. She swore that she feared for her life. She provided details of Nuñez's forced entry into her home and his attack on her mother, her sister, and herself. On June 2, 2000, Mendez signed an affidavit to obtain a protective order against Nuñez. She again detailed the forced entry and attack the night of May 26. She also swore Nuñez had called her from jail and threatened to kill her family and her.
On September 15, 2000, Mendez signed an affidavit of non-prosecution.[4] She denied that Nuñez had injured her. She swore that Nuñez had the right to be on the premises. She asked the court for leniency for Nuñez.
The case went to trial on October 16, 2000. Neither Mendez nor Nuñez testified during the culpability phase of the trial. The jury convicted him. Both Mendez and Nuñez testified during the punishment phase.

1. Mendez's Testimony
Mendez testified:
[DEFENSE COUNSEL]: Well, let me get into that. First of all, did Jesus ever burglarize your home?
[MENDEZ]: No.
[DEFENSE COUNSEL]: Did he ever enter your home without permission?
[MENDEZ]: No.
[DEFENSE COUNSEL]: On May 26th, did you have a fight with Jesus?

*316 [MENDEZ]: Like marriages do, yes. There was a discussion, like all marriages have.
[DEFENSE COUNSEL]: And what was the discussion about?
[MENDEZ]: Well, you know, like couples have, and he's a little jealous.
[DEFENSE COUNSEL]: Did you have a fight over that that day?
[MENDEZ]: Well, yes.
[DEFENSE COUNSEL]: And did he start the fight or did you start the fight or how did this fight begin?
[MENDEZ]: Well, the truth is I started it.
[DEFENSE COUNSEL]: What did you start?
[MENDEZ]: I fought with him.
[DEFENSE COUNSEL]: And what were you fighting about?
[MENDEZ]: Well, he wanted us to go out, and since it was Friday, well, I was tired, I was fed up, because of the work.
[DEFENSE COUNSEL]: And what happened next?
[MENDEZ]: We were fighting, and then my mother got into it.
[DEFENSE COUNSEL]: How did your mother get into this?
[MENDEZ]: Well, she saw that we were fighting, and she had her cane, so she hit him over the head with her cane.
[DEFENSE COUNSEL]: How were you fighting with him? Describe the act of fighting with Mr. Nunez.
[MENDEZ]: By mouth, fighting.
[DEFENSE COUNSEL]: There's police statements that say that he pulled your hair.
[MENDEZ]: No, sir.
[DEFENSE COUNSEL]: Why would the police report say that?
[MENDEZ]: Because my sister was pressuring me, and please forgive me, jury, I said things that were not true.
[DEFENSE COUNSEL]: And when you were fighting or arguing with Jesus, you said that Mrs. Vicenta De La Cruz, your mother, approached both of you and hit Mr. Nunez with her cane?
[MENDEZ]: Yes.
[DEFENSE COUNSEL]: And what happened next?
[MENDEZ]: Well, when she picked up the cane, well, he grabbed it. And because of the blow, I would say he was right.
[DEFENSE COUNSEL]: Once he grabbed the cane, then what happened next?
[MENDEZ]: I grabbed the cane, and when I picked it up, I broke some glasses that were there. And various of them were broken.
[DEFENSE COUNSEL]: And what happened to your mom?
[MENDEZ]: Well, you know, the truth.
[DEFENSE COUNSEL]: Did you ever see Mr. Nunez hit her with the cane?
[MENDEZ]: I don't think he did it intentionally. Maybe when he grabbed it. It was with no intention, not wanting to.
[DEFENSE COUNSEL]: What did you see?
[MENDEZ]: The only thing I saw is that she hit him, and he grabbed the cane from her.
[DEFENSE COUNSEL]: Did you ever see your husband swing the metal cane at your mother?
[MENDEZ]: No.
[DEFENSE COUNSEL]: Your mother testified that she was pushed, and as she fell back she hit herself with *317 the door on the head. But she testified she was hit with the cane on her arm. Did you ever see Mr. Nunez do that?
[MENDEZ]: No, sir.
[DEFENSE COUNSEL]: Why would she say that?
[MENDEZ]: I do not know.
[DEFENSE COUNSEL]: And do you have knowledge as to what happened to your sister, Dora?
[MENDEZ]: Well, she had a fracture. But I told her that maybe when I picked up the cane, that's when I broke the cup, and that's when she was cut.

2. Nuñez's Testimony
Like Mendez, Nuñez testified at the punishment phase of his trial. On cross-examination, he told the jury his version of the events of May 26, 2000:
[DEFENSE COUNSEL]: How did you enter the home?
[NUÑEZ]: Well, before that I would like to go back a little bit, because from statements I have heard none of them agree with each other, and it doesn't agree with what I have.
I go back, and she says, "Bring me the truck. Let's talk."
So I go back. I go inside. I park the truck. I take off the keys, and I open the door, and I go into the house.
[DEFENSE COUNSEL]: What about the double security chain that was there on the door?
[NUÑEZ]: That little chain was loose. And also to be able to lock the door, that was broken. In fact, the policeman came out once and said you have to change your locks on your door, because she had lost the keys. So everything had been changed around.
[DEFENSE COUNSEL]: Mr. Nunez, you entered the home. What happened next? When did the altercation begin?
[NUÑEZ]: Then I told my wife, "Okay, let's talk. You told me you wanted to talk. So I'm here. Let's talk."
So my mother-in-law says, "You have nothing to talk to her about." And I told her, "Well, she's my wife. I have to talk with her."
I got violent. I recognize that. I do recognize that I did get violent. According to St. Luke, Chapter 9, 1914, it says you have to recognize your sins to be able to be forgiven.
[DEFENSE COUNSEL]: Mr. Nunez. tell me what happened inside the house.
[NUÑEZ]: I started to have an argument with my wife, yes, and yes, I did grab her. I did grab her hard.
[DEFENSE COUNSEL]: Where did you grab her?
[NUÑEZ]: From her arm. With both hands I grabbed her like this. And I told her, "Don't you understand? I want to be with you." And my mother-in-law thought thatShe became violent, and she thought I was going to hit her, and so she started hitting me.
[DEFENSE COUNSEL]: Wait a minute. Your mother-in-law came at you with what?
[NUÑEZ]: With the cane.
[DEFENSE COUNSEL]: How?
[NUÑEZ]: To hit me. She put up her hand, and she hit me. I also had blows here on my head.
[DEFENSE COUNSEL]: What happened next?
[NUÑEZ]: And she told me to let go of her, that she had called the police, that she had already called the police. And so I got mad at her, and I said that's why I didn't want to come to the *318 house, because you immediately call the police.
[DEFENSE COUNSEL]: Who are you telling this to?
[NUÑEZ]: My wife. I thought my wife had called the police when my mother-in-law said, "I called the police."
[DEFENSE COUNSEL]: Did you hit your mother-in-law with a cane?
[NUÑEZ]: Not intentionally. When I grabbed the cane from her, I could have hit her. I might have hit her, but not intentionally.
[DEFENSE COUNSEL]: Did you ever strike at her?
[NUÑEZ]: No. Not directly, no.
[DEFENSE COUNSEL]: What about Dora? I mean, where was she at this time?
[NUÑEZ]: When I was arguing with my wife and my mother-in-law was hitting me, Dora was on her knees praying. She was praying. I think she was asking for protection from God.
So she gets up, and my mother-in-law says, "Come here, Dora. Help me." And I was still grabbing on my wife. And she bit me back here, and some of my cellmates saw that.
[DEFENSE COUNSEL]: Mr. Nunez, did you hit Dora?
[NUÑEZ]: No, not intentionally. It could be when I threw the cane, because the cane I threw over there.
* * *
[PROSECUTOR]: So those aren't anything you need to accept responsibility for, is that right?
[NUÑEZ]: I do accept responsibility, because it is true that I assaulted my mother-in-law.
[PROSECUTOR]: Okay.
[NUÑEZ]: But you are asking me about everything that happened on the 26th.
[PROSECUTOR]: Okay. Of everything that happened on the 26th, everything that all the witnesses testified to, you are accepting responsibility for one action, is that correct?
[NUÑEZ]: I accept responsibility for the assault on my mother-in-law, for my wife, for my sister-in-law and for other things. But if you want to find me guilty, well, that's too bad.
* * *
[PROSECUTOR]: I would like for you to look at this jury and tell them that you recognize the fact that you were choking Alicia Mendez on the night of the 26th.
[NUÑEZ]: Well, we were pushing and pulling, but my intentions were not to choke her.
[PROSECUTOR]: Okay. So you accidentally choked her?
[NUÑEZ]: It wasn't my intention to choke her, much lessI was grabbing her with my hands.
* * *
[PROSECUTOR]: You also told us that Dora's accident to her hand, her injuries to her hand, were also an accident, right?
[NUÑEZ]: It could have been an accident. I'm not saying it was an accident.
[PROSECUTOR]: Okay. Well, did you intentionally strike her with the cane or any other object?
[NUÑEZ]: Yes. Yes.
This appeal ensued. Nuñez brings eleven issues.[5]

*319 III. ISSUES ON APPEAL

In his first and second issues, Nuñez challenges the burglary statute as unconstitutional. Nuñez argues that the difference in sentencing between burglary with the intent to commit assault and misdemeanor assault creates an unreasonable and arbitrary classification in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and the Equal Rights clause of article I, section 3 of the Texas Constitution. See U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3. He also argues that a felony sentence for the crime of burglary of a habitation with the intent to commit assault constitutes a disproportionate punishment under the Eighth Amendment of the United States Constitution and article I, section 13 of the Texas Constitution. See U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13.
In issue three, Nuñez contends that the trial judge's remarks while reading the charge constituted egregious error. In issue four, he maintains that the charge the trial judge read aloud to the jury also constituted egregious error.
In issues five and seven, Nuñez challenges the sufficiency of the evidence to sustain his burglary conviction. He argues the evidence is insufficient to prove either lack of consent to enter Mendez's home or his intent to commit assault on entry.
In issue six, Nuñez complains that the evidence is insufficient to prove serious bodily injury to Mendez, Dora de la Cruz, or Vicenta de la Cruz. In issue nine and in a supplemental issue, Nuñez contends that the evidence is insufficient to sustain his conviction for aggravated assault of Mendez. He argues that the State did not call Mendez as a witness and neither explained nor accounted for her absence. In issue ten, Nuñez asserts that the trial court's comments during defense counsel's efforts to introduce Mendez's affidavit of non-prosecution during the culpability phase impermissibly shifted the burden of proof to the defense.
Finally, Nuñez asserts in issue eleven that the trial court's admission of medical records constituted fundamental error. He argues that the business records affidavits authenticating the medical records were not timely filed. He asserts that the State did not show by clear, convincing, and unequivocal evidence that the records were mistakenly file-stamped by the clerk.
We turn to the issues. We first discuss Nuñez's waiver at trial of his constitutional, judicial-comment, and jury-charge claims.

IV. WAIVER
To preserve a complaint for appellate review, a party must present a timely request, objection, or motion to the trial court stating the specific grounds for the desired ruling if the specific grounds were not apparent from the context. TEX. R.APP. P. 33.1(a); Blue v. State, 41 S.W.3d 129, 131 (Tex.Crim.App.2000). Generally, a party's failure to timely and specifically object at trial waives error. See Blue, 41 S.W.3d at 131. An accused may waive even constitutional rights. Saldano v. State, 70 S.W.3d 873, 891 (Tex.Crim.App. 2002); Jenkins v. State, 912 S.W.2d 793, 815 (Tex.Crim.App.1995) (op. on reh'g). Nonetheless, rule 103(d) of the rules of evidence authorizes us in a criminal case to "take notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court." *320 TEX.R. Evid. 103(d). "Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system." Blue, 41 S.W.3d at 131. "A principle [sic] characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone." Id. Instead, an accused must expressly relinquish a fundamental right. Id.

A. The Unconstitutionality Claims
In his first and second issues, Nuñez challenges the constitutionality of the burglary statute with regard to the punishment it authorizes. See TEX. PEN. CODE ANN. § 30.02(a) (Vernon 2003). He first argues that it is unreasonable and arbitrary to classify the crime of burglary with intent to commit assault as a felony when the crime of assault alone is classified as a misdemeanor. Similarly, he argues that punishment as a felony of the crime of burglary with intent to commit assault results in a disproportionate punishment that is cruel and unusual. Nuñez did not present either of his arguments to the trial court. Accordingly, we hold that Nuñez waived at trial his equal-protection and equal-rights claims. See Saldano, 70 S.W.3d at 891. We also hold that Nuñez waived at trial his cruel-and-unusual and disproportionate-punishment claims. See Jenkins, 912 S.W.2d at 815; see also Quintana v. State, 777 S.W.2d 474, 479 (Tex. App.-Corpus Christi 1989, pet. ref'd). Further, we hold that the rights Nuñez alleges, for the first time on appeal, to have been violated by the punishment scheme incorporated into the burglary statute are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection. See Blue, 41 S.W.3d at 131. We overrule Nuñez's first and second issues.

B. The Judicial-Comment and Jury-Charge Claims
During comments before reading the charge to the jury, the trial judge stated:
Then finally on the last pages there are what we call the verdict pages. That's the pagesthere are two of themwhere you decide guilt or innocence on each of the five cases.
While everything in the charge is important and everything deals with things that the law feels like you need to know in order to decide one of these cases, probably the most important part of the charge is what we call the application paragraphs, which are the five separate paragraphs that deal with the five separate charges.
The law puts a much higher standard on me for what I have to have in there. They punish me more when I make a mistake in that than if I make a mistake somewhere else. They don't punish me, but they are more likely to kick a case back and so forth, which has nothing to do with you, other than I want to make the point that the real important things are those particular charges.
The trial judge then read the written charge to the jury.
In his third issue, Nuñez contends that the trial judge's emphasis on the application paragraphs distracted the jury from the remainder of the charge. In his fourth issue, Nuñez asserts that the inclusion of those remarks in the jury charge read by the trial judge constituted egregious error. From Nuñez's briefing, we are unable to discern any difference between his third and fourth issues. In any event, Nuñez did not object to either the trial judge's remarks or the jury charge as read. Accordingly, we hold that he waived at trial any complaint with regard to the trial *321 judge's oral comments or the charge as read to the jury. See Blue, 41 S.W.3d at 131. We also hold that neither the remarks nor the charge as read to the jury constituted the type of egregious error contemplated by Almanza so as to have relieved Nuñez of the necessity of an objection. See Fuentes v. State, 991 S.W.2d 267, 276 (Tex.Crim.App.1999) (citing Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g)). We overrule Nuñez's third and fourth issues.
We now address to what extent Nunez's testimony during the punishment phase of his trial estopped him from raising sufficiency challenges on appeal. We also discuss the scope of the sufficiency review we perform.

V. Sufficiency of the Evidence

A. Estoppel by Testimony
During the punishment phase of his trial, Nuñez admitted responsibility for his assaults on Mendez, Dora de la Cruz, and Vicenta de la Cruz. Therefore, we must determine if he is estopped from raising any challenge to the sufficiency of the evidence to sustain his convictions for aggravated assault and injury to an elderly individual because he admitted as much at the punishment phase. See De Garmo v. State, 691 S.W.2d 657, 660-61 (Tex.Crim. App.1985) (defendant who admitted at punishment phase to committing charged murder may not bring sufficiency challenge on appeal), limited by Leday v. State, 983 S.W.2d 713, 725-26 (Tex.Crim. App.1998) (De Garmo applies to waiver of sufficiency challenge but cannot be used to find waiver of exclusionary rule) and Reyes v. State, 994 S.W.2d 151, 153 (Tex. Crim.App.1999) (defendant's admission of guilt at punishment phase waives sufficiency challenge but does not waive appellate review of alleged violation of right to have guilt assessed by a twelve-person jury); see also Manning v. State, 112 S.W.3d 740, 747 n. 4 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.) (designated for publication) (appellant's admission during punishment phase of live-in relationship with complainant estopped him from challenging on appeal sufficiency of evidence to prove complainant was household member). Nuñez did not admit to entering Mendez's home without her consent. Nor did he testify about the degree of injury suffered by any of the women. We will discuss the extent of any estoppel effect of Nuñez's testimony as we address each of Nuñez's sufficiency challenges.

B. Standards and Scope of Review

1. Legal Sufficiency
A legal-sufficiency challenge calls for appellate review of the relevant evidence in the light most favorable to the verdict. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim.App.2003); Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). We consider all the evidence that sustains the conviction, whether properly or improperly admitted or whether introduced by the prosecution or the defense, in determining the legal sufficiency of the evidence. Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim. App.2001) (citing Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim.App.1994) (per curiam)); Cook v. State, 858 S.W.2d 467, 470 (Tex.Crim.App.1993). Similarly, in reviewing the legal sufficiency of the evidence, we look to all of the evidence introduced during either stage of the trial. De Garmo, 691 S.W.2d at 661.[6]
*322 Legal sufficiency is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). This standard of legal sufficiency ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted. Id. We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. 2781; Johnson, 23 S.W.3d at 7.
If we reverse a criminal case for legal insufficiency, we reform the judgment to reflect conviction for a lesser offense only if a jury charge on the lesser offense was either submitted or requested but denied. Collier v. State, 999 S.W.2d 779, 782 (Tex.Crim.App.1999). Otherwise, we vacate the judgment of conviction for legal insufficiency and order a judgment of acquittal. Swearingen, 101 S.W.3d at 95.

a. Hypothetically Correct Jury Charge for Burglary

(1) Elements of Burglary
The elements of burglary are: (1) a person; (2) without effective consent of the owner; (3) enters a habitation or building; (4) not then open to the public; (5) with the intent to commit a felony, theft, or assault. Tex. Pen.Code Ann. § 30.02(a)(1) (Vernon 2003); see Alba v. State, 905 S.W.2d 581, 584 (Tex.Crim.App.1995); see also Gregg v. State, 881 S.W.2d 946, 951 (Tex.App.-Corpus Christi 1994, pet. ref'd).

(2) Definitions of Terms Used in the Burglary Statute
An "owner" is one who has title to the property in question; possession of the property, whether lawful or not; or greater right to possession of the property than the actor. Tex. Pen.Code Ann. § 1.07(a)(35) (Vernon 2003). "Consent" is defined as assent in fact, whether express or apparent. Tex. Pen.Code Ann. § 1.07(a)(11) (Vernon 2003). In a burglary prosecution, the State may prove lack of consent to enter by circumstantial evidence. Taylor v. State, 508 S.W.2d 393, 397 (Tex.Crim.App.1974).
Burglary requires proof of intent to commit a theft, felony, or assault. Moore v. State, 54 S.W.3d 529, 539 (Tex. App.-Fort Worth 2001, pet. ref'd); McGee v. State, 923 S.W.2d 605, 608 (Tex.App.-Houston [1st Dist.] 1995, no pet.). The jury alone is empowered to determine the issue of intent. Moore, 54 S.W.3d at 539. The events of a burglary may imply the intent with which the accused entered. Id. Therefore, intent may be inferred from the accused's conduct and surrounding circumstances. Id.

b. Hypothetically Correct Jury Charge for Aggravated Assault

(1) Elements of Aggravated Assault
A person commits assault by intentionally, knowingly, or recklessly causing bodily injury to another, including the person's spouse. Tex. Pen.Code Ann. § 22.01(a)(1) (Vernon 2003). The elements of aggravated assault are that a person commit assault and either: (1) cause serious bodily injury to another; or (2) use or exhibit a deadly weapon during the commission of the assault. Tex. Pen.Code Ann. § 22.02(a) (Vernon 2003); Ferrel v. State, 55 S.W.3d 586, 589 (Tex.Crim.App.2001).

*323 (2) Definitions of Terms Used in the Assault Statute

"Bodily injury" means physical pain, illness, or any impairment of physical condition. Tex. Pen.Code Ann. § 1.07(a)(8) (Vernon 2003); Nelson v. State, 612 S.W.2d 605, 607 (Tex.Crim.App. [Panel Op.] 1981). Bruising is evidence of physical pain sufficient to show "bodily injury." Goodin v. State, 750 S.W.2d 857, 859 (Tex. App.-Corpus Christi 1988, pet. ref'd). The jury may infer from evidence of bruises and muscle strain that the victim suffered physical pain. Id. It is not necessary for the victim to testify to having suffered pain. Id.
"Serious bodily injury" is bodily injury that creates a substantial risk of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any "bodily member or organ." Tex. Pen.Code Ann. § 1.07(a)(46) (Vernon 2003); Ferrel, 55 S.W.3d at 589. The State bears the burden of showing that an assault caused serious bodily injury. Moore v. State, 739 S.W.2d 347, 352 (Tex.Crim.App.1987). To show protracted loss of a "bodily member or organ," the State must show that the injuries were "either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." Moore, 739 S.W.2d at 352 (citing Burton, Legal Thesaurus 418 (1980 edition)). Bruises alone are not necessarily evidence of serious bodily injury. Muniz v. State, 851 S.W.2d 238, 266 (Tex.Crim.App.1993); see Pickering v. State, 596 S.W.2d 124, at 128 (Tex.Crim.App. [Panel Op.] 1980) (holding that bruises and burns do not show serious bodily injury per se).
"Deadly weapon" is defined as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Pen.Code Ann. § 1.07(a)(17)(B) (Vernon 2003); Ferrel, 55 S.W.3d at 589. An object may be a deadly weapon by its manner of use. See Adame v. State, 69 S.W.3d 581, 584 (Tex.Crim. App.2002) (Meyers, J., concurring). If an actor uses or intends to use an object in such a way that the object is capable of causing death or serious bodily injury, it is a deadly weapon. Id. In determining whether an object is a "deadly weapon," a jury may consider: (1) the physical proximity between the alleged victim and the object; (2) any threats or words used by the accused; (3) the size and shape of the object; (4) the potential of the object to inflict death or serious injury; and (5) the manner in which the accused allegedly used the object. Id. No one factor is determinative. Id. Each case must be examined on its own facts. Id. Finally, the use of a deadly weapon during the commission of an assault does not create an inference of serious bodily injury. Moore, 739 S.W.2d at 352.

c. Hypothetically Correct Jury Charge for Injury to an Elderly Individual

(1) Elements of Injury to an Elderly Individual
A person commits injury to an elderly individual if that person intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury. Tex. Pen.Code Ann. § 22.04(a) (Vernon 2003).

(2) Definitions of Terms Used in the Injury-to-an-Elderly Individual Statute
An "elderly individual" is a person sixty-five years of age or older. TEX. PEN.CODE *324 ANN. § 22.04(c)(3) (Vernon 2003). Since the injury-to-an-elderly-individual statute uses the terms "bodily injury" and "serious bodily injury," the same definitions apply as with the assault statute. See TEX. PEN. CODE ANN. § 22.04(a) (Vernon 2003).

2. Factual Sufficiency
We are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of the offense with which Nuñez was charged. See Johnson, 23 S.W.3d at 6. In determining the factual sufficiency of the elements of the offense, we view all the evidence neutrally, not through the prism of "the light most favorable to the prosecution." Id. at 6-7 (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.1996)). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id. at 7. A clearly wrong and unjust verdict is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." Rojas v. State, 986 S.W.2d 241, 247 (Tex.Crim.App.1998). In conducting a factual-sufficiency review, we review the fact finder's weighing of the evidence. Johnson, 23 S.W.3d at 7 (citing Clewis, 922 S.W.2d at 133). We review the evidence weighed by the jury that tends to prove a material disputed fact and compare it with evidence that tends to disprove it. Johnson, 23 S.W.3d at 7. We are authorized to disagree with the fact finder's determination. Id. However, we approach a factual-sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder. Id. Our evaluation should not intrude substantially on the fact finder's role as the sole judge of the weight and credibility given to witness testimony. Id.
We always remain aware of the fact finder's role and unique position, a position we are unable to occupy. Id. at 9. Exercise of our authority to disagree with the fact finder's determination is appropriate only when the record clearly indicates our intervention is necessary to stop manifest injustice. Id. Otherwise, we accord due deference to the fact finder's determinations, particularly those concerning the weight and credibility of the evidence. Id. Absent exceptional circumstances, issues of witness credibility are for the jury, and we may not substitute our view of the credibility of a witness for the constitutionally guaranteed jury determination. Id.
Every fact need not point directly and independently to the accused's guilt. Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex.Crim.App.1981). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. Id. We reverse a judgment of conviction only if proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Swearingen, 101 S.W.3d at 97.
In conducting a factual sufficiency review in an opinion, we "show our work" when we consider and address the appellant's main argument for urging insufficiency of the evidence. Tex.R.App. P. 47.1; Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.App.2003); Manning, 112 S.W.3d at 747. This practice benefits the parties, maintains the integrity of the justice system, and improves appellate practice. Sims, 99 S.W.3d at 603; Manning, 112 S.W.3d at 747.
If we reverse a criminal case for factual insufficiency, we vacate the judgment of conviction. Clewis, 922 S.W.2d at 133-34. We remand for a new trial a criminal case reversed for factual insufficiency, so a second *325 jury has the chance to evaluate the evidence. Swearingen, 101 S.W.3d at 97.

C. Sufficiency Analyses
We construe Nuñez's brief liberally, as we must, and conclude he raises both legal and factual sufficiency challenges. See Tex.R.App. P. 38.9. Nuñez specifically questions the sufficiency of the evidence to sustain his burglary conviction as to the elements of: (1) lack of consent to enter the Mendez home (issue five); and (2) his intent to commit assault on entry (issue seven). Nuñez also challenges the sufficiency of the evidence to prove the element of serious bodily injury to Mendez, Dora de la Cruz, and Vicenta de la Cruz (issue six). Finally, Nuñez asserts that the evidence is insufficient to sustain his conviction for aggravated assault of Mendez (issues nine and ten and a supplemental issue).

1. Burglary of a Habitation
Nuñez asserts that the evidence is insufficient to prove the elements of burglary on two grounds. In his fifth issue, Nuñez challenges whether the State proved that Nuñez entered Mendez's house without Mendez's consent. He argues that he had been living in the duplex with Mendez for over a month. Evidence of a locked door at night, he maintains, is not sufficient to prove that Mendez, between the time he left at 5:30 p.m. and his return five hours later, had withdrawn her consent for him to enter the home. In his seventh issue, Nuñez challenges whether the State proved that he entered Mendez's duplex with the intent to commit assault.

a. Consent

(1) Estoppel
Nuñez did not admit when he testified at the punishment phase that he did not have Mendez's permission to enter. We hold that Nuñez's testimony at the punishment phase does not estop him from challenging the sufficiency of the evidence to sustain his burglary conviction by challenging the sufficiency of the evidence to support the element of consent to enter. See Manning, 112 S.W.3d at 747; see also Duffy v. State, 33 S.W.3d 17, 21-22 (Tex. App.-El Paso 2000, no pet.); Pegues v. State, 964 S.W.2d 678, 679 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd).

(2) Legal Sufficiency of Evidence of Lack of Consent
Nuñez contends the State did not prove that Mendez had withdrawn her consent for him to enter her duplex. Evidence at trial in support of the jury's finding of the necessary burglary element of lack of consent to enter included testimony that: (1) Mendez told her mother and sister that she wanted Nuñez to move out; (2) Mendez placed Nuñez's belongings outside the front door; (3) the front door was secured with a security chain in addition to the lock to which Nuñez had a key; (4) Mendez did not remove the security chain or unlock the door to permit Nuñez to enter; and (5) Nuñez had to break the door down to gain entry. Further, affidavits signed by Mendez and admitted into evidence during the punishment phase said that Nuñez did not have Mendez's consent to be in her home. Considering all the evidence that sustains the conviction, measured against the element of lack of consent to enter as defined by a hypothetically correct jury charge for burglary, we find that a rational trier of fact could have found beyond a reasonable doubt lack of consent to enter. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240. We hold that the evidence is legally sufficient to support the burglary element of lack of consent to enter. See Jackson, 443 *326 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240.

(3) Factual Sufficiency of Evidence of Lack of Consent
In addition to the evidence reviewed above in our legal-sufficiency analysis, Nuñez argues that the State did not prove he noticed that Mendez had removed his personal belongings from the house. Further, the testimony suggests that Mendez instructed Nuñez to return home and bring her truck back, from which Nuñez may have inferred he still had her consent to enter the duplex. Finally, Mendez said in her affidavit of non-prosecution as well as during her testimony at the punishment phase that Nuñez had her consent to be on the premises. Viewing neutrally all the evidence regarding Mendez's consent for Nuñez to enter and comparing the evidence that tends to prove she withdrew her consent with evidence that tends to prove she did not, we do not find the verdict so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Johnson, 23 S.W.3d at 7. We hold that the evidence is factually sufficient to support the burglary element of lack of consent to enter. See id. We overrule Nuñez's fifth issue.

b. Intent to Commit Assault

(1) Estoppel
Nuñez did not testify at the punishment phase that he intended to commit assault when he entered Mendez's duplex. We hold that Nuñez's testimony at the punishment phase does not estop him from challenging the sufficiency of the evidence to sustain his burglary conviction by challenging the sufficiency of the evidence to support the element of intent to commit assault. See Manning, 112 S.W.3d at 747; see also Duffy, 33 S.W.3d at 21-22; Pegues, 964 S.W.2d at 679.

(2) Legal Sufficiency of Evidence of Intent
Evidence at trial in support of the jury's finding of the necessary burglary element of intent to commit assault included testimony that: (1) Nuñez had assaulted Mendez earlier in the evening; (2) he physically broke the door down; (3) he immediately assaulted Mendez and then Dora de la Cruz and Vicenta de la Cruz; and (4) he continued to physically struggle with the arresting officers who responded to the disturbance call. See Moore, 54 S.W.3d at 539. Considering all the evidence that sustains the conviction, measured against the element of intent to commit assault as defined by a hypothetically correct jury charge for burglary, we find that a rational trier of fact could have found intent to commit assault beyond a reasonable doubt. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240. We hold that the evidence is legally sufficient to support the burglary element of intent to commit assault. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240.

(3) Factual Sufficiency of Evidence of Intent
We find no evidence during either phase of the trial to balance against the inference of intent to commit assault created by the circumstances surrounding Nuñez's entry into Mendez's home. Viewing neutrally all the evidence of Nuñez's intent, we do not find the verdict so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Johnson, 23 S.W.3d at 7. We hold that the evidence is factually sufficient to support the burglary *327 element of intent to commit assault. See id. We overrule Nuñez's seventh issue.

2. Serious Bodily Injury

(1) Estoppel
Nuñez did not testify at the punishment phase regarding the degree of injury suffered by any of the three women. We hold that Nuñez's testimony at the punishment phase does not estop him from challenging the sufficiency of the evidence to sustain his convictions for aggravated assault by challenging the sufficiency of the evidence to support the element of serious bodily injury. See Manning, 112 S.W.3d at 747; see also Duffy, 33 S.W.3d at 21-22; Pegues, 964 S.W.2d at 679.

(2) Legal Sufficiency of Evidence of Serious Bodily Injury
Nuñez specifically contends that photographs documenting the injuries sustained by Mendez, Dora de la Cruz, and Vicenta de la Cruz were insufficient to prove serious bodily injury. While the photographs depict bruises, he argues, they do not show injuries that would result in loss of use of a "bodily member or organ." See TEX. PEN. CODE ANN. § 1.07(a)(46) (Vernon 2003). Similarly, Nuñez contends that the State also failed to prove serious bodily injury with respect to Mendez because the State did not call her as a witness. For the same reason, he contends that the evidence is legally and factually insufficient to sustain his conviction for aggravated assault of Mendez.
Nuñez was convicted on two counts of aggravated assault. The first count was for the aggravated assault of Mendez. The second was for the aggravated assault of Dora de la Cruz.

(a) The Aggravated Assault of Alicia Mendez
Vicenta de la Cruz and Dora de la Cruz testified that Nuñez struck Mendez. Nuñez pulled Mendez's hair, using enough force to pull the hair out of her head, and choked her with the metal walking cane. As a result of the attack, Mendez showed signs of injury that were perceptible to the jury by photographs taken at the police station and by medical records that documented the injuries. Specifically, photographs of Mendez's injuries from the attack showed bruising and swelling on both of her arms. The medical reports recorded abrasions, hematoma, contusions, or bruises to her arms and the back of her head. Her level of pain was recorded as mild to moderate. Mendez did not suffer any bone fractures. A medical document recommended that Mendez treat her injuries by applying ice for two days and taking ibuprofen, an over-the-counter anti-inflammatory medication, as needed for pain.
Nuñez urges that the evidence showed bodily injury to Mendez, not serious bodily injury. We agree. See Moore, 739 S.W.2d at 352. The evidence did not indicate that the injuries suffered by Mendez were likely to cause death or a substantial risk of death. See id. Nor did the evidence show that the injuries would result in serious permanent disfigurement or protracted loss of any "bodily member or organ." See id. Considering all the evidence that sustains the conviction, measured against the element of serious bodily injury as defined by a hypothetically correct jury charge for aggravated assault, we find that a rational trier of fact could not have found serious bodily injury to Mendez beyond a reasonable doubt. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240. We hold that the evidence *328 is legally insufficient to support the serious bodily injury element of aggravated assault with regard to Mendez. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240.
Nevertheless, a hypothetically correct jury charge also would instruct the jury to find Nuñez guilty of aggravated assault of Mendez if it found that Nuñez used or exhibited the metal cane as a deadly weapon. See Tex. Pen.Code Ann. § 22.02(a) (Vernon 2003); see also Ferrel, 55 S.W.3d at 589; Malik, 953 S.W.2d at 240. Nuñez used the walking cane to choke Mendez. The cane was made of metal. We find that the jury could have inferred that the manner in which Nuñez used the cane against Mendez might have caused serious bodily injury. See Tex. Pen.Code Ann. § 22.02(a) (Vernon 2003); see also Ferrel, 55 S.W.3d at 589. Considering all the evidence that sustains the conviction, measured against the deadly weapon element of aggravated assault as defined by a hypothetically correct jury charge for the offense, we find that a rational trier of fact could have found beyond a reasonable doubt that Nuñez used a deadly weapon to assault Mendez. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240.
Nuñez also contends that the State could not prove its case against him, including the element of serious bodily injury, for the aggravated assault of Mendez without calling her to testify. It is undisputed that Mendez did not testify during the culpability phase of the trial.
The State may prove the elements of an offense without the testimony of the complainant. See Chavez v. State, 508 S.W.2d 384, 386 (Tex.Crim.App.1974) (holding that accused is not denied right of confrontation when complainant does not appear and testify at trial and State does not introduce complainant's previously recorded testimony). The State is not required to produce every conceivable witness with knowledge of the case. Aguilar v. State, 468 S.W.2d 75, 78 (Tex. Crim.App. 1971). The State need only prove the accused's guilt beyond a reasonable doubt. Shelvin v. State, 884 S.W.2d 874, 877 (Tex. App.-Austin 1994, pet. ref'd). Moreover, the State has the right to prove its case any way it sees fit, subject to the rules of evidence and the requirements of due process. Johns v. State, 155 Tex.Crim. 503, 236 S.W.2d 820, 822 (1951); Shelvin, 884 S.W.2d at 877. An accused may not direct either the method or manner of the State's proof. Johns, 236 S.W.2d at 822; Shelvin, 884 S.W.2d at 877.
The State introduced evidence of Nuñez's aggravated assault of Mendez and her injuries through other admissible testimony. See Chavez, 508 S.W.2d at 386. The State did not introduce any of Mendez's affidavits during the culpability phase of the trial. Accordingly, we find that the State was not required to produce Mendez at trial. See Johns, 236 S.W.2d at 822; see also Shelvin, 884 S.W.2d at 877. Considering all the evidence that sustains Nuñez's conviction for the aggravated assault of Mendez, measured against the elements of the offense as defined by a hypothetically correct jury charge, we find that a rational trier of fact could have found beyond a reasonable doubt that Nuñez committed aggravated assault on Mendez. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240. We hold that the evidence is legally sufficient to sustain Nuñez's conviction for the aggravated assault of Mendez. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240.
*329 In a related argument, Nuñez asserts that comments by the trial judge during his efforts to introduce Mendez's non-prosecution affidavit shifted the burden of proof from the State to the defense. The following colloquy occurred during the trial:
[DEFENSE COUNSEL]: Are you aware that Mrs. Mendez sent an affidavit to Judge Murray whereby she says that
[PROSECUTOR]: Your Honor, I object.
[THE COURT]: Sustained. Counsel, if you want to call Miss Mendez to the witness stand, it's your case and you are welcome to do so. You are not going to go into hearsay.
[DEFENSE COUNSEL]: Judge, these are exculpatory statements that the court itself tendered to the defense.
[THE COURT]: I gave you everything that a relative sent to me. And I assume if you want to call her, she's told you where you can send the
[DEFENSE COUNSEL]: Judge
[PROSECUTOR]: I object to counsel testifying about things not in evidence.
[DEFENSE COUNSEL]: May I state
[THE COURT]: Counsel, you are not going to state what's in any kind of affidavit. If you want to call that witness to the stand and you want to question her about, one, what happened on the event in question, and two, what she thinks they ought to do about it, you are welcome to do so.
[DEFENSE COUNSEL]: Your Honor, Mrs. Mendez cannot be found.
[THE COURT]: Apparently she knows where she is.
[DEFENSE COUNSEL]: Miss Mendez is not here. And to state to this jury that I have the right to call her and subpoena her shifts the burden on me, Your Honor.
[THE COURT]: No, it doesn't.
[DEFENSE COUNSEL]: To produce a witness to corroborate an exculpatory statement made to the court.
[PROSECUTOR]: Your Honor, I object to testifying about statements.
[THE COURT]: The objection is sustained. I have ruled. You can issue a subpoena and get her in here if you want to hear what she wants to say.
[DEFENSE COUNSEL]: Judge, I would just note my objection for a bill of exception.
The State was under no obligation to call Mendez if it could otherwise prove its case. See Johns, 236 S.W.2d at 822. We have found the evidence legally sufficient, without Mendez's testimony, to sustain Nuñez's conviction for aggravated assault of Mendez. Thus, we find that the burden of proof never shifted from the State to the defense. See Shelvin, 884 S.W.2d at 877. We overrule Nuñez's ninth, tenth, and supplemental issues and that portion of his sixth issue that challenges the legal sufficiency of the evidence with regard to his conviction for the aggravated assault of Mendez.

(b) The Aggravated Assault of Dora de la Cruz
Testimony at trial showed that Nuñez also struck Dora de la Cruz with the same metal walking cane with which he choked Mendez. Dora De la Cruz testified Nuñez struck her once on her right arm with the cane. She also testified that he struck her on a finger of her left hand. The finger was cut and required stitches. Medical records indicated that Dora de la Cruz received lacerations to her left hand. The records also indicated that she felt pain in her right arm. A photograph *330 showed her left hand bandaged in gauze. She testified that the injury to her finger prevented her from closing her hand and caused pain throughout her entire arm. She also told the jury that the injury interfered with her ability to do housework. Her injuries continued to affect her six months after the assault and resulted in the loss of function.
Thus, the evidence showed that the injuries suffered by Dora de la Cruz were likely to cause protracted loss or impairment of the function of a "bodily member or organ." See Tex. Pen.Code Ann. § 1.07(a)(46) (Vernon 2003); see also Ferrel, 55 S.W.3d at 589. Considering all the evidence that sustains the conviction, measured against the element of serious bodily injury as defined by a hypothetically correct jury charge for aggravated assault, we find that a rational trier of fact could have found serious bodily injury to Dora de la Cruz beyond a reasonable doubt. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240. We hold that the evidence is legally sufficient to support the serious bodily injury element of aggravated assault with regard to Dora de la Cruz. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; see also Johnson, 23 S.W.3d at 7; Malik, 953 S.W.2d at 240. We overrule that portion of Nuñez's sixth issue that challenges the legal sufficiency of the evidence to prove the element of serious bodily injury with regard to his conviction for aggravated assault of Dora de la Cruz.

(3) Factual Sufficiency

(a) The Aggravated Assault of Mendez
In addition to the evidence in support of the jury's verdict discussed above in analyzing the legal sufficiency of the evidence, the record shows that Mendez testified at the punishment phase that Nuñez did not assault her. She said she started the fight. She claimed that Nuñez grabbed the cane only after Vicenta de la Cruz hit him with it. A jury may accept or reject all or any part of any witness's testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.App.1986); Williams v. State, 692 S.W.2d 671, 676 (Tex.Crim.App.1984). Viewing neutrally all the evidence of Nuñez's aggravated assault of Mendez, we do not find the verdict so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Johnson, 23 S.W.3d at 7. We hold that the evidence is factually sufficient to sustain Nuñez's conviction for the aggravated assault of Mendez. See id. We overrule Nuñez's ninth, tenth, and supplemental issues and that portion of his sixth issue that challenges the factual sufficiency of the evidence with regard to his conviction for the aggravated assault of Mendez.

(b) The Aggravated Assault of Dora de la Cruz
In addition to the evidence in support of the jury's verdict discussed above in analyzing the legal sufficiency of the evidence, the medical records in evidence did not indicate that Dora de la Cruz required stitches for her injuries. However, we may not impose our view on the weight of the evidence. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given testimony. Sharp, 707 S.W.2d at 614; Williams, 692 S.W.2d at 676. The jury chose to accept Dora de la Cruz's testimony with regard to the extent of her injuries. We may not substitute our view for the jury's determination. Johnson, 23 S.W.3d at 9.
Viewing neutrally all the evidence with regard to the degree of injury suffered by Dora de la Cruz during Nunez's assault, we do not find the verdict so contrary to the overwhelming weight of the evidence *331 as to be clearly wrong and unjust. See Johnson, 23 S.W.3d at 7. We hold that the evidence is factually sufficient to support the element of serious bodily injury with regard to Nuñez's conviction for the aggravated assault of Dora de la Cruz. See id. We overrule that portion of Nuñez's sixth issue that challenges the factual sufficiency of the evidence to support the element of serious bodily injury with regard to his conviction for aggravated assault on Dora de la Cruz.

3. Injury to an Elderly Individual (Vicenta De La Cruz)
Nuñez testified at the punishment phase that he accidentally struck Vicenta de la Cruz with the metal walking cane. The elements of injury to an elderly individual do not require an intentional or knowing act. See Tex. Pen.Code Ann. § 22.04(a) (Vernon 2003). Further, either bodily injury or serious bodily injury satisfies the injury element of the offense. See id. We hold that Nuñez's testimony at the punishment phase estops him from challenging the sufficiency of the evidence to sustain his conviction for inflicting bodily injury on Vicenta de la Cruz, an elderly individual. See Manning, 112 S.W.3d at 747. Nuñez does not challenge on appeal the sufficiency of the evidence to sustain the element of bodily injury to Vicenta de la Cruz, only the element of serious bodily injury. Accordingly, we overrule that portion of Nuñez's sixth issue that challenges the legal and factual sufficiency of the evidence to support the bodily injury element of his conviction for injury to an elderly individual.

VI. ADMISSION OF MEDICAL RECORDS
In his eleventh issue, Nuñez contends that medical records introduced by the State were inadmissible because of a discrepancy between the file-stamp date and the date of the authenticating business records affidavits. The affidavits show that they were signed and notarized on August 14, 2000, a Monday. The records are file-marked August 11, 2000, which was the preceding Friday. Nuñez's objection at trial was confined to a complaint regarding the discrepancy between the signature and file-mark dates. He argues that the discrepancy amounted to a failure to establish the required predicate for authentication of the medical records.
The trial court heard evidence from a court clerk who testified that the discrepancy between the date of the affidavits and the file-stamped date was a clerical error. The trial court also heard testimony from an assistant district attorney who stated she personally delivered the medical records and supporting affidavits to the court on August 14, 2000, fourteen days before the initial scheduled trial date. We note that the case did not get called to trial on that date. Rather, the trial started on October 16, 2000. Regardless of whether the authenticated business records affidavits were filed with the court on August 11, 2000 or August 14, 2000, the medical records were on file more than fourteen days before the case went to trial. See Tex.R. Evid. 902(10). Finally, Nuñez has failed to show any prejudice as a result of the discrepancy. We overrule Nuñez's eleventh issue.

VII. CONCLUSION
Having overruled Nuñez's eleven issues on appeal, we affirm the judgment of conviction.
NOTES
[1] See Tex. Pen.Code Ann. § 30.02(a) (Vernon 2003).
[2] See Tex. Pen.Code Ann. § 22.02(a)(2) (Vernon 2003).
[3] See Tex. Pen.Code Ann. § 22.04(a)(3) (Vernon 2003).
[4] On August 28, 2000, Nuñez had pleaded guilty to five counts of assault, injury to an elderly individual, and burglary. On September 22, 2000, after Mendez provided the affidavit of non-prosecution, Nuñez withdrew his guilty plea and demanded a jury.
[5] Among other briefing irregularities, Nuñez's appellate counsel omitted numbering any issue as issue eight in appellant's brief and added an unnumbered issue in a supplemental brief, for a total of eleven issues. We direct appellate counsel to the provisions of rule 38.1 regarding the requisites of appellate briefs. See TEX.R.APP. P. 38.1.
[6] As discussed above, the court of criminal appeals limited the De Garmo holding on other grounds. See Leday v. State, 983 S.W.2d 713, 725-26 (Tex.Crim.App.1998). Leday did not modify De Garmo's holding that appellate courts consider evidence adduced at the punishment phase when reviewing sufficiency of the evidence to support a conviction.