11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Charnell Blaylock, Jr. 

Appellant

Vs.                   No. 11-03-00270-CR B Appeal from Taylor County

State
of Texas  

Appellee

 

The jury convicted appellant of burglary of a
habitation.  Appellant pleaded true to
two enhancement allegations, and the jury assessed punishment at 25 years
imprisonment.  We affirm.

                                                                     Background

TEX. PENAL CODE ANN. '
30.02(a)(1) (Vernon 2003) provides that a person commits the offense of
burglary of a habitation if, without the effective consent of the owner, the
person enters a habitation with intent to commit a felony, theft, or an
assault.  The indictment alleged that, on
or about January 10, 2002, appellant intentionally and knowingly entered Sheila
Pierre=s
habitation, without her effective consent, with the intent to commit
assault.  TEX. PENAL CODE ANN. ' 22.01(a) (Vernon Supp. 2004) provides
that a person commits the offense of assault if the person:

(1) intentionally, knowingly, or recklessly causes
bodily injury to another, including the person=s
spouse;

 

(2) intentionally or knowingly threatens another
with imminent bodily injury, including the person=s
spouse; or 

 

(3) intentionally or knowingly causes physical
contact with another when the person knows or should reasonably believe that
the other will regard the contact as offensive or provocative.

 

                                                                  Issue
on Appeal

In his sole point of error, appellant argues that
the evidence was factually insufficient to prove that he intended to commit the
offense of assault at the time he entered Pierre=s
house. 

 








                                                               Standard
of Review

In order to determine if the evidence is factually
sufficient, we must review all of the evi-dence in a neutral light and
determine whether the evidence supporting guilt is so weak that the verdict is
clearly wrong and manifestly unjust or whether the evidence contrary to the
verdict is so strong that the beyond-a-reasonable-doubt burden of proof could
not have been met.  Zuniga v. State,
No. 539-02, 2004 WL 840786 (Tex.Cr.App. April 21, 2004); Ross v. State,
133 S.W.3d 618 (Tex. Cr.App.2004); Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
The jury is the sole judge of the weight and credibility of the
witnesses=
testimony, and due deference must be given to the jury=s
determination.  TEX. CODE CRIM. PRO. ANN.
arts. 36.13 & 38.04 (Vernon 1979 & 1981); Johnson v. State, 23
S.W.3d 1 (Tex.Cr.App.2000).

                                                                                    .  Testimony

Pierre testified that the incident occurred on
January 10, 2002, at about 6:45 p.m. at her house at 5214 Durango Street in
Abilene, Taylor County.  Pierre said that
she and appellant had dated and had later lived together for about six months
during 2001.  She and appellant had moved
into the house on Durango Street in October 2001.  Appellant had moved out of the house about
two weeks later.  Pierre said that
appellant had not spent the night with her on the night before the
incident.   

Pierre testified about the incident.  She said that her doorbell rang on January
10, 2002, at about 6:45 p.m.  She looked
out of a window and saw appellant at the door. 
She said that appellant had his bicycle with him.  Pierre said that she did not answer the door
because she did not want to see appellant. 
Appellant then knocked on the door. 
Pierre did not answer the door, and appellant rode off on his bike.  Within about five minutes, appellant came
back to Pierre=s house
and knocked on the back door.  Pierre did
not answer the door.  Pierre testified
that appellant said:  AI know you=re
in there. Open this door.@  Appellant kept knocking on the door.  Pierre eventually told appellant that she did
not want to be bothered and that he should go away.     








Pierre said that appellant went to the front door
and then came back to the back door. 
Pierre told appellant that she had company and that she did not want to
be bothered.  Pierre testified that she
did not have company but told appellant that she did in an attempt to get him
to leave.  Pierre said that appellant
seemed to get more irritated when she told him that she had company.  Pierre testified that appellant said:  AYou=re going to open up this f-----g door.@ 
Pierre said that appellant went back to the front door.  She said that the front door was locked with
two locks.  Pierre said that appellant
kicked in the door, breaking the doorjamb. 

Pierre testified that appellant went from room to
room in the house to see whether anyone was there.  Appellant told her that he loved her and
wanted to get back together.  Pierre told
appellant that she wanted him to leave. 
Pierre said that appellant grabbed her leg.  She said that appellant started ranting,
raving, and crying.  She said that appellant
was acting crazy, like a Amad
man.@  Appellant begged Pierre to take him
back.  Pierre told appellant that it was
over.  Appellant continued to hold onto
Pierre=s leg,
and she tried to get away.  Pierre said
that appellant became violent.  Appellant
tried to bite Pierre on her ear. 
Appellant got her up against a wall, put his hand around her throat, and
choked her.  Pierre told appellant that
she could not breathe.  Pierre said that
the choking was painful.  After a few
seconds, Pierre was able to get away from appellant.  Pierre said that appellant finally left. 

Pierre testified that the incident lasted about
ten minutes.  She said that she believed
her life was on the line when appellant was in the house. 

Abilene Police Officer Eric Katona testified that,
on January 10, 2002, at about 6:50 p.m., he received a call about an incident
that had occurred at a Durango Street address. 
He was asked to assist in locating appellant.  He said that he found appellant about 30
minutes after receiving the call. Appellant told Officer Katona that he had not
been on Durango Street at anyone=s
residence that day and that he did not know anyone who lived on Durango Street.









Abilene Police Detective Willie Ford testified
that, on January 16, 2002, appellant came to his office.  Detective Ford read appellant his Miranda [1]
rights and told him that he was free to leave. Appellant gave him a written
statement about the incident.  In the
statement, appellant said (1) that he had knocked on Pierre=s front door and then gone around to
the back door; (2) that he saw a light go off in the house; (3) that seeing the
light go off aggravated him; (4) that he kept knocking on the door; (5) that
Pierre said that she had company and told him to go away; (6) that Pierre=s statement that she had company really
bothered him because he thought that Pierre had another man in the house; (7)
that he kicked the front door in and went inside the house; (8) that he grabbed
Pierre=s leg and
hugged her; (9) that Pierre tried to get away; (10) that he just wanted to talk
to Pierre; and (11) that he got  angry
because Pierre would not talk to him. 

Appellant told Detective Ford that he was taking
Pierre job applications on the night of the incident.  Appellant told Detective Ford that he did not
choke or assault Pierre. 

Appellant testified that he and Pierre moved into
the house on Durango Street in October 2001. 
Appellant moved out of the house about two and one-half weeks
later.  He said that he did not go to
Pierre=s house
during November and December of 2001. 
Appellant said that he spent the night with Pierre at her house on
January 9, 2002.  He testified that he
told her that he would bring her some job applications. 

Appellant said that, after he got off of work on
January 10, he rode his bicycle to Pierre=s
house.  He said that he had Pierre=s job applications with him.  Appellant testified that he knocked on Pierre=s front door but that there was no
answer.  He left and then went back to
Pierre=s house.
When there was no answer, appellant went to the back door.  He said that he saw the bathroom light go
off.  He told Pierre to let him know if
she was in the house.  Appellant
testified that he told Pierre that he wanted to talk to her and that he had job
applications for her.  Pierre said that
she had company and told appellant to leave. 
Appellant said that he was upset because he thought that Pierre had
another man in the house.  He said that
he pushed the front door in with his shoulder. 
He said that he did not kick the door in.  He said that two of the locks were in the
locked position when he pushed the door in. 
He said that he entered Pierre=s
house out of anger. 








Appellant testified that he did not go from room
to room looking for someone in the house. He said that he told Pierre that he
had her job applications and that he had gotten his job back.  Appellant said that he wanted to let Pierre
know how much he cared for her. 
Appellant said that Pierre got hysterical and said:  ALook
what you did to the door.@  Appellant said that he grabbed Pierre around
her waist and hugged her legs.  Appellant
testified that he and Pierre were wrestling. Appellant was trying to hold
Pierre, and she was trying to get away from him.  Appellant said that he did not choke
Pierre.  He testified that he did not
want to hurt Pierre in anyway.  He said
that he did not intend to assault anybody. 
He said that he left after Pierre told him to go home. 

Appellant said that he talked with Officer
Katona.  He said that he told Officer
Katona that he had not been on Durango Street on the night of the incident and
that he did not know anybody who lived on Durango Street. 

                                                                        Analysis

In a prosecution for burglary, the State has the
burden to prove beyond a reasonable doubt that the defendant intended to commit
the felony, theft, or assault at the time of his entry.  Linder v. State, 828 S.W.2d 290, 294
(Tex.App. - Houston [1st Dist.] 1992, pet=n
ref=d). 
The issue of intent may not be left simply to speculation or
surmise.  However, the jury is exclusively
empowered to determine the issue of intent, and the events of a burglary may
imply the intent with which the defendant entered.  Nunez v. State, 117 S.W.3d 309, 322
(Tex.App. - Corpus Christi 2003, no pet=n);
Moore v. State, 54 S.W.3d 529, 539 (Tex.App. - Fort Worth 2001, pet=n ref=d);  McGee v. State, 923 S.W.2d 605, 608
(Tex.App. - Houston [1st Dist.] 1995, no pet=n).  Therefore, intent may be inferred from the
defendant=s conduct
and surrounding circumstances.  Nunez
v. State, supra; Moore v. State, supra.








Viewing all of the evidence in a neutral light, we
cannot conclude that the evidence supporting appellant=s
guilt of the offense of burglary of a habitation with the intent to commit
assault is so weak that the verdict is clearly wrong and manifestly unjust or
that the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met. 
Pierre said that appellant became more irritated when she told him that
she had company.  She said that appellant
told her:  AYou=re going to open up this f-----g door.@ 
Appellant testified that he was upset because he thought that there was
another man in the house.  Appellant
kicked in Pierre=s front
door that was locked with two locks. 
Appellant admitted that he entered the house out of anger.  Pierre said that appellant was ranting,
raving, and acting like a Amad
man.@  Pierre testified that appellant searched the
house to see whether anyone else was there. 
Pierre said that appellant held her by her leg and choked her when he
was in the house.  Appellant testified
that Pierre was trying to get away from him. 
Appellant said that he only wanted to talk to Pierre and denied choking
Pierre.  However,  as the sole judge of the credibility of the
witnesses and the weight to be given their testimony, the jury was free to
believe or disbelieve all or any part of the testimony.  Article 38.04; Beardsley v. State, 738
S.W.2d 681, 684 (Tex.Cr.App.1987).  The
evidence was factually sufficient to prove that appellant intended to commit
assault at the time that he entered Pierre=s
house.  Appellant=s
point of error is overruled.

                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

 

September 9, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











    
[1]Miranda v. Arizona, 384 U.S. 436 (1966).