NUMBER 13-03-036-CR

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG





TONY WAYNE CORNETT,                                                 Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.




On appeal from the 177th District Court
of Harris County, Texas.




MEMORANDUM OPINION
Before Justices Hinojosa, Yañez, and Castillo


Memorandum Opinion by Justice Castillo

         A jury convicted appellant Tony Wayne Cornett of aggravated assault by threat.


 
The trial court sentenced him as an habitual offender to confinement for thirty-five
years in the Institutional Division of the Texas Department of Criminal Justice.


 The
trial court has certified that Cornett has the right of appeal. See Tex. R. App. P. 25.2. 
By two issues, Cornett complains of factual insufficiency and improper jury argument. 
We affirm. 
I. RELEVANT FACTS
         This is a memorandum opinion not designated for publication. The parties are
familiar with the facts. We will not recite them here except as necessary to advise the
parties of our decision and the basic reasons for it. See Tex. R. App. P. 47.4.
         Cornett and his brother, Terry Cornett, lived together. They argued a lot. On
June 21, 2002, Cornett was upset because Terry had taken Cornett's cigarette lighter. 
Cornett was "acting kind of crazy" and "was upset before he even came home," Terry
told the jury. The disagreement continued for some time. Terry eventually refused to
argue anymore. Cornett became agitated and picked up a carpet-cutting blade.


 Terry
testified the blade was sharp enough to rip up carpet. He readily agreed with the
prosecutor that it "could do some damage to someone." 
         Terry told Cornett he was going to call the police and went to the phone. 
Cornett "got more upset about the situation," Terry said. Terry started to call the
police. Cornett snatched the phone out of his brother's hand and threw it down. 
Terry picked up the phone and again started to dial. Cornett was standing nearby,
Terry testified, and said, "he wanted – he will hurt me with the knife." When asked
what the specific words were, Terry responded, "He said he was going to kill me with
the knife." He felt like Cornett would carry out the threat, Terry told the jury. He 
showed the jury how Cornett had held the knife in his hand, explaining that Cornett
had held it "just like he was ready." 
         After making the call, Terry waited out front for the police while Cornett stayed
in the back. Terry told Cornett, "I'm coming up front and you sit your butt right here
in this chair and wait for the law." 
         Terry admitted that the argument did not frighten him enough to try and get
away from his brother. He conceded that Cornett did not again try to stop him from
calling the police. He testified it was a "possibility" that Cornett said "go ahead and
call" the police. He acknowledged that Cornett did not strike him. He agreed that
Cornett used the carpet-cutting blade for his trade and always had it with him. 
         The brothers waited thirty to thirty-five minutes for the police to arrive. Cornett
did not leave the chair. Houston police officer Robert Tarver told the jury that Terry
flagged him down when Tarver approached the address where the officer had been
dispatched to a domestic disturbance involving a weapon. Tarver found Cornett
"seated in a chair at the back of the driveway." Cornett held the carpet-cutting blade
in his hand. He was agitated, yelling, "Kill me. I want you to kill me, m----f----
[expletive]. Kill me." Cornett "was perspiring," Tarver testified. "Evidently he was
on something. He wasn't thinking rational, acting rational. He was back there
yelling." Cornett appeared to be intoxicated, Tarver told the jury, and was waving the
knife around. Tarver drew his weapon, pointed it at Cornett, and told him to drop the
knife. The officer instructed Cornett to drop the weapon "probably ten times" in two
minutes. Cornett finally dropped the knife next to his foot, where it was still within
reach. Tarver told him to pick it up and throw it farther away. Cornett tossed the
carpet-cutting blade on the other side of a fence by the driveway. 
         By the time Cornett had thrown away the knife, other officers had arrived at the
scene. The officers told Cornett to get out of the chair and lay on the ground. Cornett
refused. The officers approached Cornett. They wrestled Cornett to the ground and
handcuffed him. 
         Cornett was belligerent and verbally abusive as he was being arrested, officer
Vincent Jones testified. When the officers tried to place him in custody, Cornett was
combative and tensed up. He refused to put his hands behind his back. He refused
to give any personal information about himself. He appeared to be under the influence
of alcohol or some type of narcotic. Officer Meridith R. Campbell confirmed that
Cornett was combative, uncooperative, and verbally abusive before, during, and after
his arrest and transport to jail. 

II. FACTUAL-SUFFICIENCY ANALYSIS
                                          A. Standard of Review
         This Court measures the factual sufficiency of the evidence in this case against
a hypothetically correct jury charge. Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.—Corpus Christi 2002, pet. ref'd); see Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). A hypothetically correct jury charge is one that "accurately
sets out the law, is authorized by the indictment, does not unnecessarily increase the
State's burden of proof or unnecessarily restrict the State's theories of liability, and
adequately describes the particular offense for which the defendant
was tried." Malik, 953 S.W.2d at 240. A hypothetically correct jury charge
would not simply quote from the controlling statute. Gollihar v. State,
46 S.W.3d 243, 254 (Tex. Crim. App. 2001). Its scope is limited by "the
statutory elements of the offense . . . as modified by the charging instrument." Fuller
v. State, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002) (Keller, P.J., concurring)
(quoting Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)). When a
statute lists more than one method of committing an offense, and the indictment
alleges some, but not all, of the statutorily listed methods, the State is limited to the
methods alleged. Fuller, 73 S.W.3d at 255; Curry, 30 S.W.3d at 404. 
         We are constitutionally empowered to review the judgment of the trial court to
determine the factual sufficiency of the evidence used to establish the elements of the
charged offense. Johnson v. State, 23 S.W.3d 1, 6 (Tex. Crim. App. 2000). In
determining the factual sufficiency of the elements of the offense, we view all the
evidence neutrally, not through the prism of "the light most favorable to the
prosecution." Id. at 6-7 (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996)). We set aside a finding of guilt only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Johnson, 23 S.W.3d at 7. A clearly wrong and unjust finding of guilt is
"manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." Rojas
v. State, 986 S.W.2d 241, 247 (Tex. Crim. App. 1998). 
         In conducting a factual-sufficiency review, we review the fact finder's weighing
of the evidence. Johnson, 23 S.W.3d at 7 (citing Clewis, 922 S.W.2d at 133). We
review the evidence that tends to prove a material disputed fact and compare it with
evidence that tends to disprove it. Johnson, 23 S.W.3d at 7. We are authorized to
disagree with the fact finder's determination. Id. However, we approach a factual-sufficiency review with appropriate deference to avoid substituting our judgment for
that of the fact finder. Id. Our evaluation should not intrude substantially on the fact
finder's role as the sole judge of the weight and credibility given to witness
testimony.  Id. 
         We always remain aware of the fact finder's role and unique position, a position
we are unable to occupy. Id. at 9. Exercise of our authority to disagree with the fact
finder's determination is appropriate only when the record clearly indicates our
intervention is necessary to stop manifest injustice. Id. Otherwise, we accord due
deference to the fact finder's determinations, particularly those concerning the weight
and credibility of the evidence. Id. 
         Every fact need not point directly and independently to the accused's guilt. 
Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A finding of guilt
can rest on the combined and cumulative force of all the incriminating circumstances.
Id. When an appellant challenges the factual sufficiency of the elements of the
offense, we ask whether "a neutral review of all the evidence . . . demonstrates that
the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim.
App. 2003) (quoting Johnson, 23 S.W.3d at 11); see Swearingen v. State,
101 S.W.3d 89, 97 (Tex. Crim. App. 2003). 
         In conducting a factual-sufficiency review in an opinion, we "show
our work" when we consider and address the appellant's main argument for
urging insufficiency of the evidence. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003); Johnson, 23 S.W.3d at 9; Manning v. State, 112 S.W.3d 740, 747 (Tex.
App.–Houston [14th Dist.] 2003, no pet. h.); see Tex. R. App. P. 47.1. This practice
benefits the parties, maintains the integrity of the justice system, and improves
appellate practice.  Sims, 99 S.W.3d at 603; Manning, 112 S.W.3d at 747. If we
reverse a criminal case for factual insufficiency, we vacate the judgment of conviction. 
Clewis, 922 S.W.2d at 133-34. We remand for a new trial a criminal case reversed
for factual insufficiency, so a second fact finder has the chance to evaluate the
evidence. Swearingen, 101 S.W.3d at 97. 
B. The Hypothetically Correct Jury Charge
1. The Indictment
         The indictment stated, in pertinent part:
 TONY WAYNE CORNETT . . . on or about JUNE 21, 2002, did
then and there unlawfully, intentionally and knowingly threaten Terry
Cornett with imminent bodily injury by using and exhibiting a deadly
weapon, namely, a knife.

2. The Elements of Aggravated Assault as Limited by the Indictment
         One of the ways a person commits assault is by intentionally or knowingly
threatening another with imminent bodily injury. Tex. Pen. Code Ann. § 22.01(a)(2)
(Vernon Supp. 2004); Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). 
One of the ways a person commits aggravated assault is by: (1) committing assault
as defined in section 22.01; and (2) using or exhibiting a deadly weapon during
commission of the assault. Tex. Pen. Code Ann. § 22.02(a) (Vernon Supp. 2004);
Green v. State, 831 S.W.2d 89, 93 (Tex. App.–Corpus Christi 1992, no pet.). 
         Therefore, the hypothetically correct jury charge for this case would ask the jury
if Cornett: (1) intentionally and knowingly (2) threatened (3) Terry Cornett (4) with
imminent bodily injury (5) by using and exhibiting a deadly weapon, namely a knife,
(6) during the assault. We turn to relevant definitions. 

3. Definitions Used in the Aggravated Assault Statute
         Aggravated assault by threat is a "nature of conduct" offense and has no
required result. See Guzman v. State, 988 S.W.2d 884, 887 (Tex. App.–Corpus
Christi 1999, no pet.). The offense is satisfied if the accused intentionally or
knowingly engaged in the prohibited conduct – threatening with imminent bodily injury,
aggravated by making the threat with a deadly weapon. See id. Thus, the definitions
in the hypothetically correct jury charge in this case concerning the applicable culpable
mental state should be limited to the nature of the conduct, rather than result of
conduct or circumstances surrounding the conduct. 
         A person acts intentionally with respect to the nature of conduct when it is
the person's conscious objective or desire to engage in the conduct. Tex. Pen. Code
Ann. § 6.03(a) (Vernon 2003). Similarly, a person acts knowingly, or with knowledge,
with respect to the nature of conduct when the person is aware of the nature of the
conduct. Tex. Pen. Code Ann. § 6.03(b) (Vernon 2003). 
         A fact finder may infer the accused's mental state from the acts, words, and
conduct of the accused and from the circumstances surrounding the acts in which the
accused engaged. See Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim.
App. 1991); Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). 
An accused rarely facilitates conviction by admitting to the requisite intent or
knowledge. It seldom is possible to prove by direct evidence what an accused
intended or knew at the time of the incident. Thus, the fact finder usually must
infer intent and knowledge from circumstantial evidence rather than direct proof. 
See Gardner v. State, 736 S.W.2d 179, 182 (Tex. App.–Dallas 1987), aff'd,
780 S.W.2d 259 (Tex. Crim. App. 1989); see also Hernandez, 819 S.W.2d at 810;
Dillon, 574 S.W.2d at 94-95. 
         Further, the fact finder may draw an inference of guilt from the accused's
acts, words, and conduct before, during, and after the incident. See Felder v.
State, 848 S.W.2d 85, 98 (Tex. Crim. App. 1992) (presentation of false identification
during arrest indicated "consciousness of guilt" and awareness of need to conceal
identity from law enforcement); see also Butler v. State, 936 S.W.2d 453, 459 (Tex.
App.–Houston [14th Dist.] 1996, pet. ref'd) (corrected op.) (giving false identification
and engaging in violent outburst after arrest indicated accused's "guilty knowledge"
of assault for which he had been arrested). 
         "Bodily injury" means physical pain, illness, or any impairment of physical
condition. Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon 2003); Nunez v. State,
117 S.W.3d 309, 323 (Tex. App.–Corpus Christi 2003, no pet.). "Deadly weapon"
is defined as anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(B)
(Vernon 2003); see Adame v. State, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002)
(Meyers, J., concurring) (and cited cases). If an actor uses or intends to use an object
in such a way that the object is capable of causing death or serious bodily injury, it is
a deadly weapon. Adame, 69 S.W.3d at 584. "Serious bodily injury" is bodily injury
that creates a substantial risk of death or causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any "bodily member
or organ." Tex. Pen. Code Ann. § 1.07(a)(46) (Vernon 2003); Nunez, 117 S.W.3d
at 323. 
          In determining whether an object is a "deadly weapon," a jury may consider: 
(1) the physical proximity between the alleged victim and the object; (2) any threats
or words used by the accused; (3) the size and shape of the object; (4) the potential
of the object to inflict death or serious injury; and (5) the manner in which the accused
allegedly used the object. Id. No one factor is determinative. Id. Each case must be
examined on its own facts. Id. 
         A knife is not a deadly weapon per se. Limuel v. State, 568 S.W.2d 309, 311
(Tex. Crim. App. [Panel Op.] 1978); Villarreal v. State, 809 S.W.2d 295, 297 (Tex.
App.–Corpus Christi 1991, pet. ref'd). To be considered a deadly weapon, the knife
must be shown in the manner of its use or intended use to be capable of causing death
or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(B) (Vernon 2003); Limuel,
568 S.W.2d at 311; Villarreal, 809 S.W.2d at 297. 
         Finally, it is well established that threats can be conveyed in more varied ways
than merely verbally. McGowan v. State, 664 S.W.2d 355, 357 (Tex. Crim.
App. 1984). An actor may communicate a threat by action or conduct as well as by
words.  Id. 
         Cornett's brief challenges the sufficiency of the evidence on factual-sufficiency
grounds only.


 With a hypothetically correct jury charge in mind that reflects the
correct instructions and elements of the offense as modified by the indictment, we
turn to our factual-sufficiency analysis. 
C. Measuring the Evidence against the Hypothetically Correct Jury Charge
         In our factual-sufficiency analysis, we view all the evidence neutrally, favoring
neither the prosecution nor Cornett. See Johnson, 23 S.W.3d at 6-7 (citing Clewis,
922 S.W.2d at 129). Cornett did not testify at trial. On appeal, he points to
inconsistencies in his brother's testimony about what Cornett actually said to Terry
when he brandished the carpet-cutting blade. Specifically, Cornett contends Terry first
testified that Cornett threatened that he could or would hurt him but later testified that
Cornett said he was going to kill him. Cornett points to Terry's testimony that
arguments between the two brothers were virtually a daily occurrence. He references
Terry's testimony that the argument did not place him in such fear that he tried to
avoid Cornett or get away from him.


 He emphasizes he ultimately permitted his
brother to call the police and remained seated, away from Terry, until they arrived. 
         Nonetheless, the jury also heard that Terry believed at the time that Cornett
would carry out his threat. Terry testified the knife was sharp enough to rip up carpet
and could do some damage to someone. The jury saw Terry demonstrate how Cornett 
held the knife and heard Terry explain "just like he was ready." The jury also heard
that Terry thought his brother "was acting kind of crazy." Finally, the jury heard the
responding police officers describe Cornett as still flourishing the carpet-cutting blade
when they arrived. The officers uniformly described Cornett as intoxicated, belligerent,
combative, and verbally abusive. 
         These conflicts in the testimony are not as weighty as Cornett's brief suggests. 
In sum, the jury heard that Cornett, intoxicated and angry, exhibited a carpet-cutting
knife while threatening to seriously injure or kill his brother with it. It heard that Terry
felt threatened. The jury could have concluded that the knife was capable of inflicting
serious bodily injury or death in the manner Cornett used it. See Tex. Pen. Code
Ann. § 1.07(a)(17)(B) (Vernon 2003); see also Villarreal, 809 S.W.2d at 297. The
jury also could have inferred Cornett's "consciousness of guilt" from his attempt to
conceal his identity from the arresting officers and his violent outbursts before, during,
and after his arrest. See Felder, 848 S.W.2d at 98; see also Butler, 936 S.W.2d
at 459. Finally, in addition to Cornett's verbal threats, the jury also could have
concluded that Cornett acted threateningly toward his brother in his nonverbal
behavior. See McGowan, 664 S.W.2d at 357; see also Green, 831 S.W.2d at 93. 
         Faced with a record of historical facts that supports conflicting inferences, we
presume that the trier of fact resolved any conflicts in favor of the prosecution. See
Jackson, 443 U.S. at 326. The jury chose to resolve the evidence in favor of the
State. We defer to that resolution. See id. Proof of Cornett's guilt is not so obviously
weak as to undermine confidence in the jury's determination, nor is the proof of his
guilt greatly outweighed by contrary proof. See Zuliani, 97 S.W.3d at 593-94. 
Viewing the evidence neutrally, we hold the evidence factually sufficient to support
the conviction. See Johnson, 23 S.W.3d at 6. We overrule Cornett's first issue. 
III. JURY ARGUMENT
         In his second issue, Cornett complains of improper jury argument at the end of
the culpability phase of the trial. He contends that the prosecutor voiced his personal
opinion, vouched for the credibility of the State's witnesses, commented indirectly on
Cornett's failure to testify, and suggested that the jury not follow the jury charge. 
Cornett argues that the cumulative effect of the improper jury argument constitutes
reversible error without the necessity of an objection at trial. He concludes that the 
argument was so prejudicial that instructions would not have cured the harm even had
he objected. The State counters that Cornett was required to but did not preserve
error. We agree with the State.


 
         An accused's "'right' not to be subjected to incurable erroneous jury arguments
is one of those rights that is forfeited by a failure to insist upon it." Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996). We hold that Cornett waived his right
to complain on appeal by not objecting at trial to the prosecutor's arguments. See
Tex. R. App. P. 33.1; see also Simpson v. State, 119 S.W.3d 262, 268 (Tex. Crim.
App. 2003) (finding waiver of any error in prosecutor's statement of personal opinion
in jury argument); Mathis v. State, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002)
(finding waiver of any error in prosecutor's description of accused as "despicable piece
of human trash"); Oliva v. State, 942 S.W.2d 727, 735 (Tex. App.–Houston [14th
Dist.] 1997), pet. dism'd, 991 S.W.2d 803 (Tex. Crim. App. 1998) (emphasizing that
counsel's failure to object to prosecutor's comment on accused's failure to testify
prevented appellant from asserting error on appeal). 
         Further, under the harm analysis required by rule 44.2(b) of the rules of
appellate procedure, we disregard any error unless it affects the appellant's substantial
rights. See Tex. R. App. P. 44.2(b). A prosecutor's improper jury argument affects an
accused's substantial rights when the error had a substantial, injurious effect or
influence on the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997); Gonzalez v. State, 115 S.W.3d 278, 285 (Tex. App.–Corpus
Christi 2003, pet. ref'd). We find that any error in the prosecutor's arguments could
have had no substantial, injurious effect or influence on the jury's verdict in light of the
compelling evidence in this case. See Cockrell, 933 S.W.2d at 89. We hold that any
error in the prosecutor's arguments did not affect Cornett's substantial rights and was
harmless. See Tex. R. App. P. 44.2(b); see also Cockrell, 933 S.W.2d at 89 (applying
former rule 81(b)(2) of rules of appellate procedure). We overrule Cornett's second
issue. 
 IV. CONCLUSION
         We affirm the judgment of the trial court. 

                                                                        ERRLINDA CASTILLO
                                                                        Justice

Do Not Publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed
this 15th day of April, 2004.