In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00166-CR


______________________________




JAMES WILLARD RANSDELL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21661




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 James Willard Ransdell, charged with unlawful restraint of Sierra Rose Ransdell (a child less
than seventeen years of age) and placing her in substantial risk of serious bodily injury, was found
guilty by a Fannin County jury. (1) This conviction being enhanced by a prior felony conviction to a
second-degree felony, Ransdell was sentenced to twenty years' imprisonment. He appeals from that
conviction.

FACTS OF THE CASE

 Ransdell suffers from bi-polar disorder and is schizophrenic, maladies from which he has
suffered for a number of years. He had previously been married to Bonnie Ransdell, who divorced
him in May 2005. The couple had three children, Sierra, Jayden, and Zach. During their marriage,
Ransdell had intermittently exhibited bizarre behavior, occasionally having paranoid delusions and
having attempted suicide at least once.

 After their divorce, Ransdell and Bonnie maintained an amicable relationship. Ransdell
(although maintaining a dwelling elsewhere) apparently had the run of Bonnie's house--both day
and night--and he and Bonnie still sometimes engaged in sex together. 


 Ransdell had, a few days before, driven off with Bonnie's car, which contained her purse,
cellular telephone, house keys, and other items. Then, in the early morning hours of November 4,
2005, Ransdell appeared at the house, telling Bonnie that he wanted to take a shower there. Bonnie
consented and was pleased to have her car and other items returned to her. 

 After he had showered, Ransdell became convinced that "people" who had malicious
intentions toward Bonnie and the couple's children were both inside and outside of the house. 
Ransdell maintained that he could see the nonexistent "people" and insisted that all of the lights be
turned off so these "people" could not see any of the Ransdell family. Ransdell used a light on
Bonnie's cellular telephone to negotiate around through the house; he even peered through the hatch
going into the attic of the house and announced that some of the "people" were in the attic as well. 
During this episode, he became extremely agitated; he shoved the entertainment center against the
front door to block its entrance to the "people" (though it is unclear whether he was attempting to
keep the "people" inside the house or outside of it), began carrying around a child's aluminum
baseball bat, and yelling enough to be foaming about the mouth. 

 The Bonham Police Department received two 9-1-1 emergency calls. One of these was from
Bonnie's next-door neighbor, who complained of having been awakened by the screaming of
Ransdell, Bonnie, and the children. The other emergency call was from Ransdell, who called to seek
police assistance in protecting against the unnamed "people" he was seeing as being a threat to his
family.

 When the first officer arrived, Sierra spotted his police flashlight and pounded on a picture
window in the front of the house, crying and screaming, "help me." The officer observed Bonnie,
with Zach in her arms, both mother and child weeping; Ransdell was in the same room, shouting, 
screaming, and "wild-eyed." Another officer arrived and the officers were told by Bonnie through
the window that the front door was barricaded, the officers proceeded to the rear door of the house. 
Sierra came running from the house with her arms extended toward one of the officers, crying and
saying, "Help me, my dad's crazy." Sierra was followed by Jayden, Bonnie, and Zach. Ransdell then
exited the rear door of the house; after he first paced back and forth, shouting that there were people
in the house. On the demands of the officers, he laid on the ground and allowed himself to be
handcuffed and escorted to jail.

 Initially, Bonnie wrote a statement for the police which said that Ransdell had blocked the
front door of the house with the entertainment center and that, when they had attempted to exit
through the rear door of the house, Ransdell had blocked them. Thereafter, Bonnie signed more than
one document requesting that no prosecution of the claim proceed, maintaining that all that she
wanted concerning Ransdell was aid in getting him treatment, not in criminal prosecution of him. 
At trial, Bonnie recanted the portion of her statement that he had barred their exit, maintaining that
Ransdell had been blocking the use of the exits to protect his family from "the people" and did not
attempt to bar any members of the family from leaving the house except in his attempt to protect
them.

 Under Section 20.02 of the Texas Penal Code, the base offense of unlawful restraint (2) is to
intentionally or knowingly restrain another person. Without additional circumstances, this is a class
A misdemeanor. Tex. Penal Code Ann. § 20.02 (Vernon 2003). However, if the restrained person
is younger than seventeen years of age, the crime escalates to a state-jail felony and it becomes a
felony of the third degree if the "actor recklessly exposes the victim to a substantial risk of serious
bodily injury." Id.

FACTUAL/LEGAL INSUFFICIENCY CLAIMS

 Ransdell raises three points of error, all relating to the legal and/or factual sufficiency of the
evidence to support the finding of guilt. (3) 

 In a factual sufficiency review, the evidence is reviewed in a neutral light rather than (as in
a legal sufficiency review) in the light most favorable to the verdict. Roberts v. State, No. AP-75,051, 2007 Tex. Crim. App. LEXIS 429 (Tex. Crim. App. Apr. 18, 2007). Evidence can be
factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak
that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence
is outweighed by the great weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006). A reversal for factual insufficiency cannot occur when "the greater weight and
preponderance of the evidence actually favors conviction!" Id. at 417. Although an appellate court
reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review
should still be deferential, with a high level of skepticism about the jury's verdict required before a
reversal can occur. Cain v. State, 958 S.W.2d 404, 407 & 410 (Tex. Crim. App. 1997).

 We apply well-known standards when reviewing challenges to the legal sufficiency of the
evidence. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). Viewing the evidence in the light
most favorable to the verdict, we determine whether any rational trier of fact could have found the
elements of the offense beyond a reasonable doubt. Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex. Crim. App. 2005); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), cert. 
denied, 544 U.S. 950 (2005); Simmons v. State, 109 S.W.3d 469, 472 (Tex. Crim. App. 2003).

 Under either a review of the factual or legal sufficiency of the evidence, the jury is the
exclusive judge of the witnesses' credibility and the weight to be given to their testimony and is free
to accept or reject any or all of the evidence presented and to make reasonable inferences and
deductions from the evidence. See Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003);
Jones v. State, 944 S.W.2d 642, 647-48 (Tex. Crim. App. 1996); Smith v. State, 895 S.W.2d 449,
452 (Tex. App.--Dallas 1995, pet. ref'd).

EVIDENCE OF ILLEGAL RESTRAINT

 Looking at the evidence, a good portion of the facts have already been set out above and there
is no need to restate them. However, as to the critical issue of the restraint of Sierra, we find some
contradictions from the primary witness to the incident, Bonnie. On direct examination at trial, some
of the testimony from Bonnie went as follows:

 Q. Did Sierra ever try to leave?

 

 A. I don't think she ever tried to leave. None of the kids were trying --
I mean, it was early in the morning. It wasn't like it was daylight and they wanted to
go outside and play. You know, they didn't try to get out the doors. The baby
wouldn't have tried to get out the door, that sort of thing.

 

 Q. Well, did James ever grab her, hold her, or put her in her room or --

 

 A. Huh-uh.

 

 Q. -- or use a verbal command to restrain her from going outside or
leaving the house?

 

 A. No.


 Bonnie also testified that Ransdell had used the entertainment center to barricade the front
door. She related that Ransdell's ranting about the "people" frightened the children, who began to
cry. From the rendition which was given by her at trial, the fears of the children--when coupled
with the irrational thought patterns of Ransdell--made the entire episode spiral upward into a truly
out-of-control situation. 

 This was the general tenor of the testimony from Bonnie regarding Ransdell's conduct
regarding the restraint of Sierra during the incident.

 However, this testimony contrasted with the written statement given by Bonnie on the
morning of November 4, 2005. In it, she related that: 

 I felt that Jay was not letting us leave the house. He was saying that he was keeping
"people in." If we went to the Back door he would go & jump on the Bar Preventing
us from going out the Rear door. He moved the entertainment center in front of the
Front door. We had no way out.


 While these two statements are not entirely inconsistent, (4) the statement given by Bonnie to
the police in the early morning after the incident does not attribute the benignity to Ransdell's
conduct which her testimony gives at trial. The general tenor which the jury could glean from the
two was that Sierra (and the others in Ransdell's family) were being restrained by Ransdell in the
house against their will. The fact that Sierra, a ten-year-old at the time, made no actual attempt to
power past her raving father in an attempt to leave the house did not diminish the fact that he was
preventing her from leaving. Section 20.01 of the Texas Penal Code provides that:

 "Restrain" means to restrict a person's movements without consent, so as to interfere
substantially with the person's liberty, by moving the person from one place to
another or by confining the person. Restraint is "without consent" if it is
accomplished by:


 (A) force, intimidation, or deception; or

 

 (B) any means, including acquiescence of the victim, if:


 (i) the victim is a child who is less than 14 years of age or an
incompetent person and the parent, guardian, or person or institution acting
in loco parentis has not acquiesced in the movement or confinement.


Tex. Penal Code Ann. § 20.01.


 There is nothing which would require the victim of an illegal restraint to attempt to escape;
the threat of force (whether real or reasonably perceived) would be sufficient to restrain her. There
was sufficient evidence, both legally and factually, for the jury to have found that Ransdell
unlawfully restrained Sierra, a child younger than fourteen years of age.

EXHIBITION OF DEADLY WEAPON IN THE COMMISSION OF AN OFFENSE

 The State concentrated a great deal on the fact that Ransdell was, at one time during the
episode, carrying around an aluminum baseball bat which his elder son (then age six) used when
playing T-ball. They elicited testimony that the boy had gotten in trouble because he had put a dent
in the family's lawnmower by hitting it with the bat; accordingly, it was substantial enough that it
could have been used as a deadly weapon.

 As mentioned before, whether or not the T-ball bat carried by Ransdell during the incident
constituted the use of a deadly weapon becomes important because Section 12.35 of the Texas Penal
Code provides that an individual adjudged guilty of a state-jail felony shall be punished for a
third-degree felony if it is shown on the trial of the offense that a deadly weapon was used or
exhibited during the commission of the offense. Tex. Penal Code Ann. § 12.35 (Vernon 2003). 
Section 1.07(17) of the Texas Penal Code defines a "deadly weapon" as being "(A) a firearm or
anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily
injury; or (B) anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury." Tex. Penal Code Ann. § 1.07(17) (Vernon Supp. 2006). Certainly, a child's
T-ball baseball bat does not fit within the category (A) above because it was not designed, made, or
adapted as set out in the statute. However, it is possible that it "in the manner of its use or intended
use" would be capable of inflicting death or serious bodily injury. Not even a knife is necessarily
a deadly weapon per se. Brown v. State, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986). There are
certain factors which a jury may consider when analyzing whether an object is a deadly weapon: 
(1) the physical proximity between the alleged victim and the object; (2) any threats or words used
by the accused; (3) the size and shape of the object; (4) the potential of the object to inflict death or
serious injury; and (5) the manner in which the accused allegedly used the object. Id. at 946-47;
Williams v. State, 575 S.W.2d 30, 32-33 (Tex. Crim. App. [Panel Op.] 1979); see also Adame v.
State, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002) (Meyers, J., concurring); Nunez v. State, 117
S.W.3d 309, 323 (Tex. App.--Corpus Christi 2003, no pet.); In re S.B., 117 S.W.3d 443, 446-47
(Tex. App.--Fort Worth 2003, no pet.). No one factor is determinative, and each case must be
examined on its own facts. Adame, 69 S.W.3d at 584; Brown, 716 S.W.2d at 946-47; Nunez, 117
S.W.3d at 323. 

 All of the testimony shows that Ransdell had been carrying the bat about as a weapon--but
not as a weapon to be used against Sierra or any other member of his family. Rather, all of the
evidence reveals that Ransdell intended this bat to aid him in protecting them against the totally
nonexistent "people" he believed posed a threat to them. He did not wave it about or thrash the air
with it; he did not threaten them with it. (5) It was plainly proven that Ransdell and the bat were in
close physical proximity to Sierra, that the bat was of a physical size and shape to inflict harm, and
that (should he have intended its use in that fashion) there was the potential of using the T-ball bat
to inflict death or serious injury. Many objects of a usually apparently-mundane character could fit
those characteristics. (6) However, there is no evidence to support any claim that he threatened to use
the bat on Sierra, that Sierra was afraid that he would use it on her, or that Ransdell used it in any
fashion to restrain her movements from the house. The only entities upon whom Ransdell intended
to use the bat, if necessary, were the "people" whom he believed were threatening his family--and
the "people" did not exist. This is not to say that, considering Ransdell's apparent propensity toward
wild irrationality, that the bat could hypothetically be used as a deadly weapon; for instance, in some
other circumstance, he could irrationally decide that a danger arose from his family and not the
chimera he perceived that night was dangerous. But the fact remains that on that night, his intended
use of the bat was to protect his family and not to place them in danger. The danger or threat posed
must be real and not simply hypothetical. To sustain a deadly weapon finding, there must be
evidence that others were actually endangered, not merely there was a hypothetical potential for
danger. Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). "While a deadly weapon
finding does not require that the object actually cause death or serious bodily injury, it does require
that the object have more than a hypothetical capability of causing death or serious bodily injury."
Johnston v. State, 115 S.W.3d 761, 764 (Tex. App.--Austin 2003), aff'd, 145 S.W.3d 215 (Tex.
Crim. App. 2004).

 We find that the evidence is legally insufficient to support the charge that Ransdell used or
exhibited a deadly weapon during the commission of the offense. This point of error is granted.

SUBSTANTIAL RISK OF SERIOUS BODILY INJURY 

 It is quite obvious that Ransdell suffers from extreme mental illnesses. His conduct on
November 4, 2005, was clearly erratic, wild, crazy, and hellish to those who had to witness it. One
can speculate upon what dire things might have occurred on that early morning if Ransdell's
delusions had taken a slightly different twist than they did that night. However, it is not the province
of the jury to have speculated on what might have occurred but, rather, what actually did occur.

 As the testimony and evidence set out above show, during the entire episode, the source of
Ransdell's anxiety was the perceived danger which the "people" posed to his family. He barricaded
the door, ranted and raved, armed himself with a small bat, and finally placed a 9-1-1 emergency call
himself in order to protect his family and to extricate them from what he apparently believed to be
some perceived but imaginary threat to them. No doubt, his rantings about the invisible "people"
and his overall conduct terrified the small children; it is impossible to gauge the adverse
psychological impact which this kind of conduct has upon small children who are placed in a
position of watching their father exhibiting this type of conduct. It is important to note that any
damage done to the children in this incident would be to their psyches and not to their persons.

 However, there was never any evidence presented that he threatened his family (including
Sierra), physically abused them in any fashion, (7) or placed them in physical danger. "Serious bodily
injury" is defined by Section 1.07(46) of the Texas Penal Code as being "bodily injury that creates
a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss
or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(46)
(Vernon Supp. 2006). Damage to the child's mental well-being does not fall within that definition. 
The evidence is not legally sufficient to show that he placed Sierra at a substantial risk of serious
bodily injury.

 The jury charge included the lesser-included offense of the state-jail felony of the illegal
restraint of a child less than seventeen years of age. We find this to have been the appropriate
finding and sentence. A court of appeals may reform a judgment of conviction to reflect conviction
of a lesser-included offense only if (1) the court finds that the evidence is insufficient to support
conviction of the charged offense, but sufficient to support conviction of the lesser-included offense,
and (2) either the jury was instructed on the lesser-included offense (at the request of a party or by
the trial court sua sponte) or one of the parties asked for but was denied such an instruction. Collier
v. State, 999 S.W.2d 779 (Tex. Crim App. 1999).

 Because there was legally insufficient evidence to support the jury's deadly weapon finding,
we sustain Ransdell's point regarding that issue. Accordingly, the trial court's judgment is modified
to delete the affirmative finding that a deadly weapon was used during the commission of the offense
and to delete the finding that Ransdell exposed Sierra to a substantial risk of serious bodily injury. 
See Williams v. State, 970 S.W.2d 566 (Tex. Crim. App. 1998) (remedy when affirmative finding
erroneously made). As reformed and modified, Ransdell's conviction of the state-jail offense of
unlawful detention of a child less than seventeen years of age is affirmed, the punishment is reversed,
and we remand the case to the trial court for a determination of the punishment for that offense. 



 Bailey C. Moseley

 Justice


Date Submitted: April 19, 2007

Date Decided: May 8, 2007


Do Not Publish


1. The jury also found that, in doing this act, Ransdell exhibited a deadly weapon which,
pursuant to Section 12.35(c)(1) of the Texas Penal Code, converts a state-jail felony to a third-degree
felony. See Tex. Penal Code Ann. § 12.35(c)(1) (Vernon 2003).
2. Under Section 20.01 of the Texas Penal Code, the word "restrain" includes the restriction
of a person's movements without consent. Restraint of a child less than fourteen years old can be
accomplished by any means (including the acquiescence of the victim) if the parent, guardian, or
person or institution acting in loco parentis has not acquiesced in the confinement. Tex. Penal
Code Ann. § 20.01 (Vernon Supp. 2006).
3. At trial, Ransdell's attorney had requested (but had been denied) a jury instruction that would
have raised the affirmative defense set out in Section 20.02(b) of the Texas Penal Code. See Tex.
Penal Code Ann. § 20.02(b). However, no point of error was raised concerning the denial of this
request and we do not consider it. 
4. In one statement, she says that he was not allowing them to leave the house; in the other, she
was saying that they nevertheless never attempted to leave.
5. The following exchange between the State and Bonnie is illustrative:


 Q. And he was roaming through the house at 3:00 in the morning with
the bat?


 A. Well, as I stated several times before, and we went through this before
about what I'm saying, when he got the bat it was all of about walking down the hall
to the living room and me telling him put the bat up, and him walking back down the
hallway. He was not roaming through the house. He was not screaming. He was not
yelling. He was not waving the bat. He was not threatening us with the bat.


 Q. Was he agitated when he had the bat?


 A. Not at me. Not at the children.
6. Andrea Yates drowned her five children in a bathtub of water. See Yates v. State, 171
S.W.3d 215 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd).
7. At one point in time, Ransdell was holding Zach, the four-year-old in his arms. The child
leaned over to go to the arms of his mother. Ransdell believed the child to be falling and grabbed
him tightly, causing Zach to cry and complain that Ransdell had hurt his leg. 


0pt;padding-bottom:12.0pt;padding-left:12.0pt'>
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00112-CV

                                                ______________________________

 

 

                                KERRI SUE HASS CULVER,
Appellant

 

                                                                V.

 

                                      BILLY RAY CULVER, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                          Trial Court
No. 2010-602

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            Kerri
Sue Hass Culver has filed a motion for rehearing.[1]  This opinion on rehearing is issued as a
substitute for our original opinion issued October 21, 2011.

            With an
action for divorce apparently pending,[2]
Billy Ray Culver sought and obtained a protective order against his wife,
Kerri.  Kerri appeals the protective
order, employing nine points of error. 
We affirm the trial courts order based on our nine principal holdings:

            (1)  Issuing the protective order was not an abuse
of discretion,

            (2)  refusing Kerris motion for discovery was not
error,

            (3)  denying Kerris motions for continuance was
not error,

            (4)  this case is not reversible for ineffective
assistance of counsel,

            (5)  this case is not subject to the Brady[3]
rule,

            (6)  Kerri has not established misconduct by
opposing counsel,

            (7)  Kerris second motion to recuse did not
trigger mandatory referral,

            (8)  failing to file findings of fact and
conclusions of law was not reversible error, and

            (9)  we cannot reverse the trial court without reversible
error.

 

            Billy filed
an application for a protective order August 30, 2010, alleging Kerri had
committed family violence and would likely commit family violence in the
future.  Billy requested an order that
Kerri not commit family violence against Billy or Billys parents; not
communicate with any of those three; not go within 200 yards of any of the
three; not go within 200 yards of the residence, workplace, or school of any of
those three; and not stalk any of them. 
The application was accompanied by an affidavit alleging facts
constituting family violence.  The trial
court issued an ex parte temporary protective order and set a hearing on the
application for September 10, 2010. 
Notice of the application for protective order was served on Kerri
August 31, 2010.  On September 8,
2010, Kerri filed a general denial, a motion for discovery, and a motion for
continuance. 

            The trial
courts hearing began September 10, 2010, with Kerri representing herself.  Billys application for a protective order was
prosecuted by the District Attorneys Office on Billys behalf.  In the middle of the hearing, Kerri made an
oral motion to recuse the trial judge, alleging bias.  The district attorney argued the motion to
recuse was facially invalid and frivolous, as well as orally requesting an
extension of the ex parte temporary protective order.  The trial court refused to recuse, suspended
the hearing, and referred the matter to an administrative judge.  The administrative judge found the recusal
motion to be untimely and facially insufficient.  

            The hearing
resumed September 28, 2010, with Kerri represented by attorney Jeff Fletcher,
whom she had retained the day before. 
The trial court orally pronounced that it was granting a standard
protective order and orally admonished Kerri not to have contact with her
husband.  The original protective order
signed by the trial court was a boilerplate check-the-box form, but all of the
boxes were left blank except the box prohibiting possession of firearms.  

            The district
attorney filed a motion for judgment nunc pro tunc, which certifies that a copy
was delivered to Kerri.  The trial court
rendered a judgment titled nunc pro tunc September 29, 2010,[4]
which additionally prohibited Kerri from committing family violence against;
communicating with; going within 200 yards of; going within 200 yards of the
residence, workplace, or school of; and from stalking Billy and Billys
mother.  This protective order had the
same expiration date as the original temporary protective orderSeptember 27,
2012.  On October 1, 2010, Kerri filed a
motion for new trial[5]
and was personally served with a copy of the judgment signed September 27,
2010.  On October 20, 2010, Kerri filed a
second request for recusal and a motion for continuance.  On October 25, 2010, Kerri filed a notice of
appeal.  On October 28, 2010,[6]
the trial court rendered a second judgment, denoted nunc pro tunc, adding
Bills fathers workplace to the list of places Kerri was prohibited from going
near.  On November 8, 2010,[7]
the trial court held a hearing, during which the district attorney acknowledged
Kerri did not have notice and was not present and at which the trial court
clarified that Fletcher had been appointed Kerris attorney in a criminal
proceeding, but was not appointed to represent her in the protective-order
case.

            While her
appeal was pending, Kerri filed a petition for writ of mandamus, which this
Court denied.  In denying mandamus
relief, we held that the two judgments nunc pro tunc corrected judicial mistakes
but, because the trial court still had plenary jurisdiction, were modified
judgments.  In re Culver, No. 06-11-00028-CV, 2011 Tex. App. LEXIS 2236 (Tex.
App.Texarkana Mar. 29, 2011, orig. proceeding) (mem. op.).

1.         Issuing the Protective Order Was Not an
Abuse of Discretion

 

            In two of her points of
error, Kerri complains that the evidence is insufficient to support the
protective order.[8]

            Kerri argues
the evidence is factually insufficient because the 9-1-1 tape and police
reports establishe[s] the opposite of a vital fact.  The 9-1-1 recording and police reports were
not admitted into evidence.[9]  Kerri argues that Billy admitted he had not
been placed in fear of his life and that Kerri had plenty of time to hurt him
before the arrival of the police.  Billy,
though, was not required to prove he was placed in fear of his life.[10]  The statutory definition of family violence
required only that Billy was placed in fear of physical harm or bodily injury,
or that an assault had occurred.

            To be entitled
to a protective order under Title 4 of the Texas Family Code, Billy was
required to prove family violence had occurred and would likely occur in the
future.  Tex. Fam. Code Ann. § 85.001 (West 2008).  The Texas Family Code defines family
violence as 

  (1) an act by a member of a family or
household against another member of the family or household that is intended to
result in physical harm, bodily injury, assault, or sexual assault or that is a
threat that reasonably places the member in fear of imminent physical harm,
bodily injury, assault, or sexual assault, but does not include defensive
measures to protect oneself;

 

 
(2) abuse, as that term is defined by Sections 261.001(1) (C), (E), and
(G), by a member of a family or household toward a child of the family or
household; or

 

 
(3) dating violence, as that term is defined by Section 71.0021.

 

Tex. Fam. Code Ann.
§ 71.004 (West 2008).

 

            Because
a protective order is in the nature of a civil injunction,[11]
this Court has held a protective order should be reviewed for an abuse of
discretion.  See In re Epperson, 213 S.W.3d 541, 54243 (Tex. App.Texarkana
2007, no pet.) (noting split of authority). 
A trial court abuses its discretion if it acts without reference to any
guiding rules and principles or reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.  See
Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 24142 (Tex. 1985).

            Billy
introduced sufficient evidence that Kerri committed an act intended to result
in placing Billy in fear of imminent physical harm, bodily injury, or
assault.  Billy testified[12]
concerning an argument he and Kerri had at the house she owns in Enchanted
Lakes concerning her involvement in dog rescue and it consuming our life
completely.  Billy left and started
walking towards Mineola on the blacktop road back towards 69.  Billy testified Kerri was hysterical and
followed him in a car.  According to
Billy, Kerri started basically trying to run me off the road to make me stop
and then she came close to hitting me a couple of times.  Billy testified that Kerri ran him into the
ditch several times and that he had to walk into the woods to get around her
car.  When he was able to get a cell
phone signal, Billy called the police. 
Billy stayed on the phone with the police dispatcher until the police
arrived approximately forty-five minutes later. 
When asked, Were you in fear that you were going to be struck with that
vehicle,  Billy responded, At several
times, yes, sir.  Billy admitted, on
cross-examination, the police did not arrest Kerri, but merely told her to go
home and then gave Billy a ride to his parents house.  When asked, during cross-examination at the
second hearing, [W]e can agree that if she wanted to run over you with her
car, she could have gotten that done that day, couldnt she?  Billy responded, I suppose she could.  The trial court could have reasonably
concluded Kerris actions caused Billy to fear imminent bodily injury.

            Billy also
introduced evidence that Kerri had assaulted him.  This Court has held [t]he definition of
assault is the same, whether in a civil or criminal trial.  Rogers
v. Peeler, 146 S.W.3d 765, 769 (Tex. App.Texarkana 2004, no pet.); see Waffle House, Inc. v. Williams, 313 S.W.3d 796, 801 n.4 (Tex. 2010).  A person commits assault under the Texas
Penal Code if the person intentionally, knowingly, or recklessly causes bodily
injury to another, intentionally or knowingly threatens another with imminent
bodily injury, or intentionally or knowingly causes physical contact when the
person knows or should reasonably believe the other will regard such contact as
offensive or provocative.  Tex. Penal Code Ann. § 22.01 (West
2011).

            On August
18, 2010,[13] Kerri showed
up at Billys parents house and entered uninvited through the back door.  When asked to leave, Kerri did leave, but
returned approximately ten minutes later. 
Kerri entered the house a second time, chased [Billy] around the dining
room table, and then chased Billy into the back yard.  Billy called the police.  Billy testified that, on this occasion, Kerri
threw her telephone, which hit him in the back shoulder.  Billy testified the phone caused physical
pain.  Billy testified, during
cross-examination, that he told the police that he did not want Kerri to go to
jail, that he did not want to file a report, and that he just wanted Kerri to
leave.  The fact that Billy suffered only
physical pain does not prevent the act from being an assault.  The term bodily injury is defined as
physical pain, illness, or any impairment of physical condition.  Tex.
Penal Code Ann. § 1.07(a) (8) (West 2011).  Further, Kerri should have known Billy would
regard being hit in the shoulder by a telephone as offensive.  The trial court could have reasonably
concluded Kerri assaulted Billy.

            Billy also
introduced sufficient evidence for the trial court to conclude family violence
would occur in the future.  Billy
testified he had been stalked by Kerri, who had followed Billy to a mall in
Sulphur Springs,[14] where they
argued.  When asked, since the August 18
incident, the number of times Kerri has appeared uninvited around [him],
Billy testified that [t]hey are too numerous and explained:

She drives by at all hours of the day
and night.  She leaves messages,
telephone calls.  I never know if shes
going to walk up behind me in any store. 

 

The trial court could have reasonably concluded family
violence was likely to occur in the future.

 

            The trial
court could reasonably conclude Billy was testifying truthfully.  The credibility of witnesses is within the
sole province of the fact-finder.  Walker & Assocs. Surveying v. Austin,
301 S.W.3d 909, 916 (Tex. App.Texarkana 2009, no pet.).  The trial court did not abuse its discretion
in finding that family violence had occurred and would likely occur in the
future.  We overrule Kerris points of
error attacking the sufficiency of the evidence.

2.         Refusing Kerris Motion for Discovery
Was Not Error

 

            In one point of error,
Kerri contends the trial court erred in failing to grant her motion for
discovery.  Kerri filed a motion for
discovery two days before the hearing in which she requested that Billy provide
her with all evidence including audio, video, photographs, written reports,
etc. that he intends to enter as evidence in the above referenced cause.  The record does not contain any ruling on
this motion.[15]

            Kerri has
not directed this Court to any specific provision for discovery in proceedings
relative to protective orders, which are placed on an extremely expedited
schedule.  An ex parte temporary
protective order expires within twenty days (although it may be extended for
additional 20-day periods), and Section 84.001 provides that a hearing on an
application for a protective order should occur within fourteen days.  Tex.
Fam. Code Ann. §§ 83.002, 84.001 (West 2008).  

            In the
absence of a specific provision, the general discovery provisions of the Texas
Rules of Civil Procedure would apply.  See Tex.
R. Civ. P. 190215.6.  The record
does not contain any court order modifying the default deadlines for discovery
or any request for such order.  Assuming
discovery is available, given the expedited schedule and lack of a specific
discovery provision granting discovery in the context of protective orders, the
trial court did not err in failing to rule on Kerris motion for discovery.  Without a request and showing of good cause
to modify the default discovery deadlines, Kerris motion for discovery was not
timely.  A request for production must be
filed thirty days before the end of the discovery period, which ends thirty
days before trial.  See Tex. R. Civ. P.
190.3, 196.1.  While we recognize this
deadline was impossible to comply with under the expedited trial schedule for
applications for protective orders, this deadline applies in the absence of a
court order modifying the default deadlines. 
Since the record does not contain any such court order, agreement, or
other modification of the discovery deadlines, Kerris motion was not
timely.  We overrule Kerris point of
error regarding the motion for discovery.

3.         Denying Kerris Motions for Continuance
Was Not Error

 

            In her first
and second points of error, Kerri also complains about the trial court denying
her motions for continuance.  In her
first, second, and fourth points of error, Kerri claims the trial constituted
trial by ambush.  Kerri filed her first
motion for continuance two days before the first hearing.  In this motion, Kerri alleges that she had
filed open records request[s] with multiple law enforcement agencies and
sufficient time had not passed to obtain the documents.  The day before the hearing was scheduled to
resume following disposition of Kerris motion to recuse, Kerri filed a second
motion for continuance that alleged she had hired counsel today to represent her
in this matter and counsel has not and will not have adequate time to prepare
for trial before tomorrow.[16]

            We
review the decision to grant or deny a motion for continuance for an abuse of discretion.
 Villegas
v. Carter, 711 S.W.2d 624, 626 (Tex. 1986); In re A.D.A., 287 S.W.3d 382, 387 (Tex. App.Texarkana 2009, no
pet.).  The Texas Rules of Civil
Procedure state that a continuance shall not be granted except for sufficient
cause supported by affidavit, or by consent of the parties, or by operation of
law.  Tex.
R. Civ. P. 251.  Neither motion
for continuance was accompanied by an affidavit, and there is no indication in
the record that Billy consented to either motion.  The trial court did not abuse its discretion
in denying the motions for continuance.  See In
re R.A.L., 291 S.W.3d 438, 448 (Tex. App.Texarkana 2009, no pet.).

4.         This Case Is Not Reversible for
Ineffective Assistance of Counsel

 

            The
doctrine of ineffective assistance of counsel does not apply to civil cases
where there is no constitutional[17]
or statutory right to counsel.  See,
e.g., McCoy v. Tex. Instruments, Inc., 183 S.W.3d 548, 553 (Tex.
App.Dallas 2006, no pet.); Cherqui v.
Westheimer St. Festival Corp., 116 S.W.3d 337, 343 (Tex. App.Houston [14th
Dist.] 2003, no pet.); cf. In re M.S.,
115 S.W.3d 534, 544 (Tex. 2003) ([T]he statutory right to counsel in
parental-rights termination cases embodies the right to effective counsel.).  Kerri has not provided this Court with any
authority that there is a right to effective assistance of counsel in a
protective order caseand we are not aware of any.  We overrule this point of error.

5.         This Case Is Not Subject to the Brady Rule

 

            In two
points of error, Kerri argues that the State withheld exculpatory evidence and
cites Brady, 373 U.S. 83.  Under Brady,
a prosecutor in a criminal proceeding has an affirmative duty to disclose
exculpatory evidence when a defendant timely files a Brady motion.  Id. 
Kerri did not file a Brady
motion.  Further, Kerri has not provided
this Court with any authority that Brady
is applicable to a protective order proceedinga civil proceedingand we are
not aware of any.  We overrule these
points of error.

6.         Kerri Has Not Established Misconduct by
Opposing Counsel

 

            In two
points of error, Kerri complains that the district attorneys office engaged in
prosecutorial misconduct and trial by ambush. 
Other than citing criminal cases and Rule 806 of the Texas Rules of
Evidence,[18] Kerri has not
provided this Court with any authority concerning this issue.[19]  As noted above, this case is a civil
proceeding.

            To the
extent the district attorneys office may have had a duty to see that justice
was done, Kerri has failed to allege any facts constituting prosecutorial
misconduct.  Kerrie argues [n]ot only
did the prosecutor know the states witness was committing perjury, the
prosecutor made a barrage of allegations against Appellant . . . .  Kerri also complains about the district
attorneys characterization of her conduct as bizarre and dangerous during
his rebuttal closing argument.  During
closing argument, the district attorney argued there had been several
violations of Texas law and domestic violence in the past.  No specific allegations were made.  In its rebuttal closing argument, the
prosecutors argument was as follows, in its entirety:

            Ms. Kerri Sue Hass behavior is
bizarre and dangerous, from filing a motion to dismiss a divorce to
persistently acting in contempt of this court, and finally making a threat, youre
going to hurt somebody.  Mr. Culver is
exercising his legal right to bring an action before this court and hes been
threatened for it.

            And her behavior in stalking him,
showing up at her mother-in-laws house uninvited, interfering with 911 calls,
using a car in an aggressive manner, and persistently violating this court
order indicates she is a danger and should not have firearms, and we shouldnt
reach the point if she wanted him hurt, then he would have been in a ditch.

            If we want him protected and not to
be the subject of this threat and actually be hurt, then we need the protective
order.  Thats the logic.  We have domestic violence in the past.  Theres a real threat that it will happen in
the future.  The State moves for
protective order.

 

While the district attorneys
choice of wordsbizarre and dangerousare harsh, the choice does not
constitute error.  We note no objection
was made to the district attorneys argument.[20]  Further, [c]ounsel should be allowed wide
latitude in arguing the evidence and reasonable inferences to the jury.  Anderson
v. Vinson Exploration, 832 S.W.2d 657, 667 (Tex. App.El Paso 1992,
writ denied).

            Kerri also
takes issue with the reference to past domestic violence.  As explained above, the statutory definition
of family violence does not require actual physical injury.  The district attorneys statement was a
reasonable interpretation of the evidence. 
The district attorneys reference to the motion to dismiss the divorce
may have referred to facts not admitted into evidence.[21]  This reference does not, however, constitute
prosecutorial misconduct, and no objection was made to this statement.  The error, if any, has not been preserved for
appellate review.  Tex. R. App. P. 33.1.  Other than the divorce reference, the
prosecutions argument consists of a permissible interpretation of the evidence
presented at the hearing.

            Kerris
remaining complaint concerns the trial court sustaining Billys evidentiary
objection to her use of the 9-1-1 recording of July 29, 2010.  As discussed above, any error concerning the
exclusion of these pieces of evidence has not been preserved for review.

            We overrule
Kerris points of error alleging prosecutorial misconduct.

 

7.         Kerris Second Motion to Recuse Did Not
Trigger Mandatory Referral

 

            Kerri
also complains that the trial court failed both to refer her second motion to
recuse to an administrative judge and to refrain from making any further
rulings while the motion was pending.[22]  Kerris second motion to recuse, which was
not verified, was filed October 20, 2010. 
On October 28, 2010, the trial court signed a second modified
judgment.  Kerri alleges the trial court
failed to refer the second recusal motion to an administrative judge and
refused to refrain from making any additional rulings while the motion was
pending, rendering the modified judgment signed October 28, 2010 void.[23]  Under Rule 18a, a trial court is required to
either recuse or refer the motion to an administrative judge.  Tex.
R. Civ. P. 18a(c), (d).  However,
a motion requesting recusal must be filed at least ten days before trial and
must be verified.  Tex. R. Civ. P. 18a(a).  The mandatory referral provisions do not come
into play when the motion is not filed ten days before trial.  Spigener
v. Wallis, 80 S.W.3d 174, 181 (Tex. App.Waco 2002, no pet.); Autry v. Autry, 646 S.W.2d 586, 588
(Tex. App.Tyler 1983, no writ).  Kerris
second motion to recuse was filed approximately three weeks after the hearing
concluded and Kerri has not alleged any exception to this general rule.[24]  Further, Kerris motion was not verified and,
thus, did not comply with Rule 18a.  See Tex.
R. Civ. P. 18a.  The trial court
did not err in failing to refer this unverified and untimely motion to an
administrative judge and was not prohibited from making any further rulings.

8) 
Failing To File Findings of Fact and Conclusions of Law Was Not
Reversible Error

            Kerri complains that
the trial court failed to file findings of fact and conclusions of law.  On October 25, 2010, Kerri requested findings
of fact and conclusions of law.  Although
requests for findings of fact and conclusions of law filed before the trial
courts modified judgment are premature, Rule 306c provides that such requests
shall be deemed filed on the date of, but subsequent to, the judgment.  Tex.
R. Civ. P. 306c.  On December 14,
2010, Kerri filed a notice of past due findings of fact and conclusions of
law.   Following a proper request and
reminder, it is mandatory for a trial court to make and file findings of fact
and conclusions of law.  In re Grossnickle, 115 S.W.3d 238, 253
(Tex. App.Texarkana 2003, no pet.). 
Failing to file findings of fact and conclusions of law was error.

            The
error, though, is not reversible. 
Although harm to the complaining party is presumed unless the contrary
appears on the face of the record, a trial courts failure to make findings
is not harmful error if the record before the appellate court affirmatively
shows that the complaining party suffered no injury.  Tenery
v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996) (quoting Cherne Indus. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989)); Las Vegas Pecan & Cattle Co. v. Zavala
County, 682 S.W.2d 254, 256 (Tex. 1984). 
When the trial court announces its reasons for its ruling in open court,
the appellants ability to present the appeal is not harmed because there was
no need to guess the reasons for the trial courts adverse ruling.  See, e.g., Sagemont Plaza Shopping ex rel. OConnor & Assocs. v. Harris County
Appraisal Dist., 30 S.W.3d 425, 427 (Tex. App.Corpus Christi 2000, pet.
denied) ; Tex. Workers Comp. Ins. Fund
v. Ashy, 972 S.W.2d 208, 21012 (Tex. App.Beaumont 1998, pet. denied); Elizondo v. Gomez, 957 S.W.2d 862, 865
(Tex. App.San Antonio 1997, writ denied). 
In this case, the trial court announced its reasons for the ruling in
open court, stating that domestic violence had occurred and would likely occur
in the future.  The trial courts
statements on the record clearly provide the basis for its ruling.  On appeal, Kerri has not explained how she
was prevented from properly presenting the case to this Court.  The trial courts error did not result in
reversible error.  See Tex. R. App. P.
44.1.

9.         We Cannot Reverse the Trial Court Without
Reversible Error

 

            Kerri also
asserts that the modified judgments are void. 
Billy agrees with her, states that Kerri received inadequate notice, and
requests this Court reverse the judgments of the trial court.

            The trial
court rendered judgment September 28, 2010, and then, while it retained plenary
jurisdiction, signed two modified judgments, respectively dated September 29,
2010, and October 28, 2010.

            Billy
assumes, as argued by Kerri, that the modified judgments are modifications of
a protective order under Chapter 87 of the Texas Family Code and that
inadequate notice was provided under Section 87.003.  See
Tex. Fam. Code Ann. §§ 87.001,
87.003 (West 2008).  Although this Court
has held the judgments signed September 29, 2010, and October 28, 2010, are
modified judgments,[25]
this Court has not held they were modifications within the meaning of, and
subject to the provisions of, Chapter 87 of the Texas Family Code.  We are not aware of any authority that
Chapter 87 must be satisfied to modify a protective order under Rule 329b of
the Texas Rules of Civil Procedure, in situations, within the plenary power of
the trial court, in which there is no new evidence taken or a new hearing held.  We believe that a trial court may modify a
protective order over which it still has plenary power in the same manner as
any other judgment.  If the trial courts
plenary jurisdiction had expired, Chapter 87 might apply depending on the
circumstances.  Because the trial courts
plenary jurisdiction had not expired, the trial court could modify the judgment
without complying with Section 87.003. 
The judgment signed October 28, 2010, was not a modification of an
existing protective order within the meaning of Chapter 87it did not include
new substantive changes based on new evidence of changed conditionsrather, it
was a modification of the protective order within the plenary power of the
trial court, based on the original evidence and hearingan important
distinction.

            In addition,
Kerri argues her due process rights were violated.  Billy also agrees that a due process
violation has occurred, reasoning that Section 87.003 of the Texas Family Code
requires a hearing and that due process requires notice and an opportunity to
be heard at a meaningful time and in a meaningful manner.  Kerri was provided with notice of the hearing
in this cause, and the hearing provided Kerri an opportunity to be heard at a
meaningful time and a meaningful manner. 
Because a trial court may modify a judgment while it still has plenary
jurisdiction pursuant to Rule 329b of the Texas Rules of Civil Procedure,
we conclude that the trial court was not required to hold an additional hearing
to vacate, set aside, modify, or amend the judgment under that rule.  Kerri has not established a violation of her
due process rights.

            But does
Billys concession that reversible error occurred require this Court to
reverse the judgments of the trial court even in the absence of reversible
error?  Billy, the appellee, has not
requested that we affirm the judgment of the trial court.  Instead, Billy requests this Court to reverse
the judgments of the trial court and remand for further proceedings.  Ordinarily, a party is not entitled to relief
which has not been requested.  See,
e.g., Horrocks v. Tex. Dept of
Transp., 852 S.W.2d 498, 499 (Tex. 1993); In re Estate of Wilson, 252 S.W.3d 708, 715 (Tex. App.Texarkana
2008, no pet.).  The Texas Supreme Court,
though, has held [a] reviewing court can reverse only when there is error in
the judgment of the court below.  Davis v. Bryan & Bryan, Inc., 730 S.W.2d 643, 644 (Tex. 1987); Chrisom v. Brown, 246 S.W.3d 102, 116 (Tex. App.Houston [14th Dist.] 2007,
no pet.).  In the absence of reversible
error, we are prohibited from reversing the judgment of the trial court.

            We
overrule the motion for rehearing.  We
affirm the trial courts judgment.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          October
3, 2011

Date Decided:             December
15, 2011

 











[1]Kerris
request for an en-banc rehearing is overruled as moot.  As a court of appeals with three justices,
every opinion of this Court is en banc.

 





[2]The
record indicates a divorce was pending, but does not specify the status of the
divorce proceeding.  A protective order
issued in the context of a divorce proceeding cannot be appealed until the
divorce is final.  See Tex. Fam. Code Ann.
§ 81.009(b) (West
2008).  The application in this case was
not filed as a motion in a suit for dissolution of a marriage.  Whether this section applies in this case has
not been assigned for our review by the parties.  This Court has held protective orders
rendered in separate cause numbers and treated entirely separate from any
divorce proceedings are not governed by Section 81.009.  See
Davis v. Davis, No. 06-07-00059-CV, 2007 Tex. App. LEXIS 4298 (Tex.
App.Texarkana June 1, 2007, no pet.) (mem. op.).

 





[3]Brady v. Maryland, 373 U.S. 83 (1963).





[4]In
her motion for rehearing, Kerri alleges that, because the two judgments filed
September 28 and 29, 2010, each contain the same date and signature, the
September 29 judgment is merely a photocopy of the September 28 judgment and
does not have an original signature by the trial judge.  Kerri claims that the October 28 modified
judgment was entered because the trial court noticed it had not actually
signed the September 29, 2010 modified judgment.  The two judgments filed September 2829 are
both dated September 28 and contain identical times and signatures.  The two judgments, however, contain
substantive differences.  All of the
boxes in Section 4 of the judgment filed September 28, except the box
prohibiting possession of firearms, were left blank.  The various boxes were checked in the
judgment filed September 29.  The record
contains a motion for judgment nunc pro tunc filed by Billy September 29.  The judgment filed September 29 is not merely
a photocopy of the September 28 judgment. 
Kerri did not complain about this issue before our original opinion in
this case.  In fact, Kerris appellants
brief contains the following statement:  On
September 29, 2010, one day later, the trial court entered a Nunc Pro Tunc
Order in the same cause without holding a hearing.  Kerri has waived any complaint concerning
this irregularity.  Besides, this issue
would have no effect on any issue argued on appeal.

 





[5]The
motion for new trial did not contain an accompanying affidavit.  The record contains an order setting a
hearing on the motion for new trial to be held October 21, 2010.  Neither the docket sheet, nor anything in the
record indicates any hearing was held that date.  

 





[6]Because
Kerri had filed a motion for new trial, the trial courts plenary jurisdiction
had been extended.  Tex. R. Civ. P. 329b.

 





[7]The
front page of the reporters record of this hearing specifies that it occurred
September 28, 2010.  The third page of
the reporters record and the docket sheet, though, specify that this hearing
occurred November 8, 2010.

 





[8]Kerri
argues she is a disabled person living on a fixed income.  Kerri alleges Billy left her while she was
pregnant, the couple was over $20,000.00 in debt, the couples land was in
foreclosure, and their residences electricity was cut off.  While we sympathize with Kerris claimed
hardships, we note these facts are not in the record.  On cross-examination, Billy admitted he had
told the police that Kerri had a disability, receives SSI disability, and had
not been taking her medication at the time of the Enchanted Lakes incident, the
incident in which Kerri was driving, Billy was walking, and Kerri got
aggressive with the vehicle.  Although
Kerri made some of the remaining factual statements on the record, Kerri was
not testifying at the time.





[9]Kerri
attempted to enter into evidence a copy of the 911 recording (presumably from
the Enchanted Lakes incident) and Billy objected, stating, [I]ts not properly
authenticated.  The trial court
sustained Billys objection.  Kerri also
attempted to have Billy read the police report. 
The trial court sustained the States objection that the report was
hearsay.  To challenge the exclusion of
evidence, a party must:  (1) attempt to
introduce the evidence; (2) if an objection is made, specify the purpose for
which the evidence is offered and give the trial court reasons why the evidence
is admissible; (3) obtain a ruling from the court; and (4) if the court rules
the evidence inadmissible, make a record, either through an informal offer of
proof or a formal bill of exceptions, of the evidence the party desires
admitted.  See Tex. R. App. P.
33.2; Tex. R. Evid. 103; see also Bobbora v. Unitrin Ins. Servs.,
255 S.W.3d 331, 335 (Tex. App.Dallas 2008, no pet.); Fletcher v. Minn. Mining & Mfg. Co., 57 S.W.3d 602 (Tex. App.Houston
[1st Dist.] 2001, pet. denied).  Kerri
failed to specify to the trial court why both pieces of evidence were admissible.  Kerri also did not make an offer of proof or
file a formal bill of exceptions.  Although
Kerri was proceeding pro se at the time of the objection, it is
well-established that a pro se litigant must comply with all applicable
procedural rules and is held to the same standards as a licensed
attorney.  Weaver v. E-Z Mart Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.Texarkana
1997, no pet.).  At the second hearing,
Kerris counselwho had one day to prepareattempted to have Billy authenticate
the 9-1-1 recording by reading the date and cause number printed on it.  The district attorney objected again, and the
trial court sustained the objection.  Again,
the trial court was not provided with reasons why the evidence was admissible,
and no attempt to make an offer of proof or file a bill of exceptions was
made.  Any error in these rulings has not
been preserved for appellate review.

 





[10]Kerri
argues Billy was required to prove he was placed in fear of his life, citing Thompson v. Thompson-ORear,
No. 06-03-00129-CV, 2004 Tex. App. LEXIS 5033 (Tex. App.Texarkana June 8,
2004, no pet.).  In that case, this Court
did not hold fear of death was required. 
In Thompson, this Court held
the evidence did not establish the acts alleged reasonably place[d] one in
fear of imminent physical harm or bodily injury.  Id.  As discussed below, the evidence is
sufficient in this case, and Thompson
is distinguishable from this case.





[11]See Tex.
Fam. Code Ann. § 88.002(5) (West 2008).

 





[12]Kerri
alleges [t]he only evidence that Mr. Culver offered was his testimony which
was hearsay.  Hearsay is a statement,
other than one made by the declarant while testifying at the trial or hearing,
offered in evidence to prove the truth of the matter asserted.  Tex.
R. Evid. 801(d).





[13]Kerri
alleges she went to the house to retrieve a trailer Billy had taken without her
permission.  Kerri claims when she
contacted the police to report the stolen trailer, the police instructed her to
contact Billy since it was registered to him. 
Kerri did not testify at the hearing. 
Billy testified he took a trailer August 17, 2010, because it contained
personal property of mine.

 





[14]When
Billy noticed Kerri following him, he contacted the sheriffs department, who
escorted Billy out of town until it appeared Kerri was headed back to Mineola.  Kerri, though, later appeared at the mall.





[15]Nothing
shows that this motion was ever brought to the attention of the trial court.





[16]At
the time this motion for continuance had been filed, approximately twenty-eight
days had passed since her original notice of the application for a protective
order and twelve days had passed since she received notice of the date trial
would resume.  To the extent Kerris
newly retained counsel was not prepared for trial, the fault lies with Kerri
choosing not to retain counsel until the eve of the hearing.

 





[17]The
Sixth Amendment grants an indigent criminal defendant the right to counsel, but
does not apply to civil cases.  Turner v. Rogers, ___ U.S. ___, 131
S.Ct. 2507, 2510 (2011).  In a civil
case, the right to counsel under the Due Process Clause is determined by
conducting an analysis to determine whether the specific dictates of due
process require appointed counsel. Id.
(quoting Mathews v. Eldridge, 424
U.S. 319, 335 (1976)).  In making this
determination, courts should consider the Eldridge
factors, which include:

 

(1)
the private interest that will be affected by the official action; (2) the risk
of an erroneous deprivation of such interest through the procedures used, and
probable value, if any, of additional procedural safeguards; and (3) the
Governments interest, including the fiscal and administrative burdens that the
additional or substitute procedures would entail.

 

Eldridge,
424 U.S. at 335; see Turner, 131 S.Ct. at 2510.





[18]Kerris
citation is TRCP 806.  The abbreviation
TRCP generally refers to the Texas Rules of Civil Procedure.  Rule 806 of the Texas Rules of Civil
Procedure concerns a claim of improvements in a trespass-to-try-title
action.  See Tex. R. Civ. P.
806.  We assume Kerri is referring to
Rule 806 of the Texas Rules of Evidence. 
SeeTex. R. Evid. 806.

 





[19]This
issue could be overruled as inadequately briefed.  See
Tex. R. App. P. 38.1(h).





[20]To
establish that an improper jury argument is reversible error, an appellant must
prove:  (1) an improper jury argument;
(2) the improper argument was not invited or provoked; (3) the error was
preserved; and (4) the error was not curable by an instruction, a prompt withdrawal
of the statement, or a reprimand by the trial court.  Standard
Fire Ins. Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979); Lone Star Ford, Inc. v. Carter, 848
S.W.2d 850, 853 (Tex. App.Houston [14th Dist.] 1993, no writ).

 





[21]Our
review of the record reveals no evidence concerning this allegation.





[22]Kerris
first motion to recuse was untimely.  Out
of an abundance of caution, the trial court referred the first motion to recuse
to an administrative judge and refrained from making any further rulings until the
first motion to recuse had been disposed of.

 





[23]Unlike
disqualification, the erroneous denial of a recusal motion does not void or
nullify the presiding judges subsequent acts. 
In re Union Pac. Res. Co., 969
S.W.2d 427, 428 (Tex. 1998) (orig. proceeding).

 





[24]Even
if Kerri had argued an exception, the motion was not filed as soon as possible
after she learned of the grounds for recusal. 
Thus, even if an exception applied, the motion would still be
untimely.  While this case was on appeal,
the trial court referred this motion to the administrative judge, and the
motion was denied as untimely and facially insufficient.





[25]Culver, 2011 Tex. App. LEXIS 2236.